## Rowand *versus* DeCamp.

1. Where a man exercises the citizen's right to denounce the action of a public officer, it is unlawful for him to make a false and malicious charge of crime or misdemeanor in office.

2. There is no obligation upon a citizen, when discussing the conduct of public servants in their official capacity and who speaks the truth, as he designs to be understood, and as he is understood by his hearers, to employ any prescribed form of expression or language. So long as he speaks the truth, in words meaning nothing else, he is not liable in damages, whether his language be chaste or vulgar, refined or scurrilous. The style of speech seems to be governed by the taste of the speaker and not by the civil law.

November 11th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN, J., absent.

Error to the Court of Common Pleas, No. 1, of *Allegheny county:* Of October and November Term 1878, No. 4.

Case by Archibald H. Rowand, Jr., against George W. DeCamp, for slander.

The plaintiff and defendant were citizens of the borough of Verona, Allegheny county, Pa., at the time of the uttering and publishing of the alleged slanderous words. The words published of plaintiff by the defendant, and upon which the plaintiff specially declared were those testified to by W. D. Houghteling, of January 4th 1875, and were that Rowand, the plaintiff, was a "damned thief," and also, that in another conversation with the same witness on a succeeding day, said defendant called the plaintiff a "thief." Other witnesses, at other different times and places, heard the defendant make use of the same language, except that the defendant added that "if any of the borough," meaning the borough of Verona bonds, "came into his hands," meaning the possession of Archibald H. Rowand, Jr., "he would steal them and run away with them."

The defendant pleaded "not guilty." He contended, throughout the trial of the case, that he did not utter the words imputed to him of and concerning the plaintiff, but that if the jury should believe that any such words were spoken by him of the plaintiff, then they were spoken of said Rowand, as burgess of the borough of Verona, and were privileged.

At the trial, before Collier, A. L. J., the defendant asked a witness the following question: "I wish you would state whether there has been a controversy in Verona borough, and between the people residing there, about the propriety of issuing bonds for local purposes there. The court admitted the evidence under objection. (Seventh assignment of error.)

The defendant also made the following offer: "To prove by the witness on the stand, that the witness, in common with other citi-

zens interested in the question of taxation in the borough of Verona, in view of the threatened issue of a larger number of borough bonds, sought DeCamp and applied to him for the purpose of securing his aid in the resistance of the issue of these bonds, DeCamp, being himself a property holder and citizen in Verona; and that, in consequence of this intervention of DeCamp, a bitter controversy arose between the burgess, the plaintiff, and DeCamp, upon the subject of the issue of bonds, to be followed by other evidence showing that DeCamp became involved in this controversy with Rowand in consequence of this, and in pursuance of his employment by the citizens, and that the words spoken of and concerning Rowand, were spoken of him in his official capacity as burgess, threatening to issue these bonds, and involve the property and taxpayers in a large bonded debt—this, for the purpose of showing the circumstances under which these words were spoken, and to rebut any presumption of personal malice, or malice on part of DeCamp towards Rowand."

Objected to, when the court said : " We will allow you to show the circumstances under which these words were uttered at any time." (Eighth assignment of error.)

The following points were submitted by the plaintiff to which are appended the answers of the court.

1. If the jury believe, from the evidence in this case, that the defamatory words, viz., that Rowand was "a thief," "a damned thief," were uttered and published by the defendant in the presence of William D. Houghteling, on January 4th 1875, and before any excitement had arisen respecting the erection of a town hall, then such communication, if the testimony of defendant himself is to be believed, was not a privileged communication, and the plaintiff was entitled to recover

Ans. "Affirmed."

2. The minutes of the borough council are open to the inspection of the citizens and property holders of the borough of Verona, and it was the duty of the defendant DeCamp, by examination thereof, to have possessed himself of the information contained in said minutes respecting the sale and purchase of said lots of ground for the erection of a town hall, and the issue of bonds, &c., before making the statements that he, Rowand, was "a thief," "a damned thief," and that "if the bonds came into his hands he [Rowand] would steal and run away with them," either as an official or as a private citizen; and if the jury believe that said DeCamp did not make the necessary inquiries from said minutes, or from other sources, and that the defamatory words that he, Rowand, is "a thief," "a damned thief," and "if the bonds of the borough come into his hands he will steal and run away with them," were uttered and published by defendant respecting the plaintiff, then such com-

[Rowand v. DeCamp.]

munication is not a privileged communication, and the plaintiff is entitled to recover.

Ans. "Refused."

3. If the jury believe that the words charged were uttered by defendant in reference to the issue of borough bonds, and in reference to the conduct of plaintiff in the sale of lots on which to erect a town hall, and in receiving the bonds of the borough in payment thereof, they are not privileged.

Ans. "Refused."

4. If the jury believe the words charged were privileged, and also that malice in fact has been shown, the verdict of the jury should be for the plaintiff.

Ans. "Affirmed."

5. That the said Arch. H. Rowand, Jr., as burgess of the borough of Verona, did sell said lots of ground to said borough, receiving bonds in payment thereof; and if the jury believe that the defendant uttered and published the words charged of, and respecting the plaintiff, then such communication is not privileged, and the verdict must be for the plaintiff.

Ans. "Refused."

6. Unless the jury believe that the explanation that the words charged had reference to the bonds, and that there was a sufficiently clear and unequivocal explanation made at the time the words were uttered to prevent an erroneous impression, the verdict must be for he plaintiff.

Ans. "Affirmed as to any words spoken of the plaintiff not in his official capacity."

The following were the points of defendant with the answers of the court thereto.

1. That it is a question of fact for the jury, under all the evidence, to find whether the alleged slanderous words, "he is a thief," or "damned thief," were spoken by the defendant of and concerning the plaintiff within one year preceding the 27th day of December 1875. If the jury do not find that the words were so spoken their verdict should be for the defendant.

Ans. "Affirmed."

2. The jury, in the consideration of the words charged as spoken by the defendant of and concerning the plaintiff, are to look at and consider all the facts and circumstances in evidence which may tend to shed light upon the meaning of the speaker.

Ans. "Affirmed and bill sealed for plaintiff." (First assignment of error.)

3. If the jury believe from the evidence the words "he is a thief," a "damned thief," or words in substance the same, were spoken with other words by which they were qualified and to refer to a contemplated issue of bonds, and that if so issued the plaintiff would or might steal or convert them to his own use, and the said

words "he is a thief" or "damned thief" were uttered by the defendant in the view that the plaintiff would unlawfully use or convert the bonds, there can be no recovery in this action.

Ans. "Affirmed and bill sealed for plaintiff." (Second assignment.)

4. If the jury should find that the alleged slanderous words were spoken by the defendant solely in reference to the official conduct of plaintiff as burgess of the borough, whether spoken at public meetings, citizen's meetings, school board meetings, or to citizens who were taxpayers and interested in the question of the issue of bonds, and if at the time of the uttering of said words he acted in good faith, with the belief that the plaintiff had been guilty of fraudulent conduct in the issue of borough bonds and the purchase of lots for a town hall, there can be no recovery, unless the jury believe the defendant was actuated by personal ill-will and hatred and malice toward the plaintiff.

Ans. "Affirmed and bill sealed for the plaintiff."

5. That the discussion of the conduct and character of public servants is a right inherent in the citizen; that this right cannot be lawfully denied or abridged; that in the discussion and free comment upon the conduct of public servants acting in their official capacity the citizen is protected whenever he speaks the truth as he designs to be understood, and as he is understood by his hearers, no matter what may be the form of expression or the language employed.

Ans. "Affirmed and bill sealed for the plaintiff." (Third assignment.)

6. If the jury believe that the plaintiff, a burgess of the borough of Verona, in connection with confederates in the council of the borough, was engaged in an enterprise to issue a large quantity of borough bonds for the purpose of enabling himself and others to reap individual gain and advantage from the creation of a borough debt, then it was the right and duty of the defendant to denounce the breach of duty, and the same will protect rather than punish the vigilance which seeks to protect the public interest.

Ans. "Affirmed as a general proposition."

7. If the jury believe from the evidence that the plaintiff, taking advantage of his official position as burgess of the borough of Verona, made a sale, either directly or indirectly, of property, for the purpose of erecting a town hall in the immediate vicinity of his own property, and received therefor more than a fair market price for the property, thus using and perverting his official position and influence to his own profit, it was a public theft, punishable by the law, and no damages should be awarded against a citizen who may denounce such conduct.

Ans. "Affirmed as a general proposition." (Fourth assignment.)

[Rowand v. DeCamp.]

8. If the jury believe that the plaintiff, whilst burgess of the borough of Verona, prostituted his public trust to his own profit, either by a direct sale of lots to the borough at an exorbitant price, or indirectly by cunningly conveying to a confederate his property, and by means of that confederate reaping the fruits of the sinuous and unlawful transaction, the defendant, as a citizen and a taxpayer, had a right to criticise and denounce the transaction as a theft.

Ans. " Affirmed and bill sealed.for plaintiff. (Fifth assignment.)

9. It is the province of the jury, from all the evidence in the case, to judge and determine the sense in which language was used and employed by the defendant.   In the interpretation of his language they are to take a reasonable view of all the circumstances, the motives of the speaker, his right of comment and criticism, the occasion for speech, the presence or absence of malice in the speaker.   All these inquiries are for the jury, and they are the exclusive judges of the facts involved.

Ans. " Affirmed."   (Sixth assignment.)

In the general charge, the court, inter alia, said: " The plaintiff charges that the defendant has spoken certain slanderous words of and concerning him; that he has called him ' a thief,' ' a damned thief,' and said that if the borough bonds came into his '(Rowand's) possession he would run away with them.'   These words are in law actionable *per se;* that is to say of a man that ' he is a thief,' ' a damned thief,' that ' he will run away with the borough bonds if they came into his possession,' are actionable words in themselves.   The first question for you to look at, then, is whether these words were uttered, and several witnesses have been called to prove that they were.   The defendant denies uttering some of the words, and qualifies the uttering of others.   If you find that the words were used in their plain ordinary meaning, with nothing to qualify them, your verdict must be for the plaintiff   There is a defence set up, however, which is made the great contest in this case.   On the part of DeCamp it is denied that he used the word ' thief' unqualifiedly, except in one instance, where he had a personal encounter in the cars; that he used it there because the plaintiff came up behind him and struck him; that at all other times it was under certain circumstances, and with certain qualifications, that would render the words used privileged, and therefore not actionable.   DeCamp alleges that he was a citizen and large property owner in the borough of Verona; that the plaintiff was burgess of the borough and a member of the town council; that at some time, early in 1875, the council passed an ordinance to build a town hall, and to issue bonds to a large amount to pay for it; that on his own behalf, and at the request of other citizens and property holders, he opposed the building of the town hall and the issue of the bonds; that an indignation. meeting was called,

15 NORRIS—32

[Rowand *v.* DeCamp.]

and as a result of the opposition to it, the council repealed the ordinance; that a short time, some few months afterwards the ordinance was re-enacted, and two lots were sold to the borough, in an indirect way, by the plaintiff, who was still burgess, and that he eventually got the bonds of the borough in payment for them; that it was done by a covinous, sinuous, tortuous arrangement, to which the plaintiff was a party; that, acting for some of the citizens of the borough as well as himself, he (the defendant) was endeavoring to defeat the issue of these bonds by legal means, by speaking in meetings, talking to taxpayers and other citizens interested, while, in the meantime, the burgess and council were proceeding with their scheme for a town hall, until stopped by an injunction (suggested by DeCamp) obtained on the ground that under the Wallace Act the council had no power to issue bonds. Under such a state of facts, if believed, the question arises had the defendant a right to use the language complained of. Merely to say of a man, because he is in office, that 'he is a thief,' is as bad a slander as to say it of a private citizen, and probably worse, because he has ordinarily less chance to defend himself. I apprehend that the law of Pennsylvania is, and so instruct you, that if the burgess and council were going to issue these bonds, the citizens had a right, in every proper manner, to defeat the issue, but whatever they did must have been done in a truthful, or believingly truthful and fair way; that any words uttered by DeCamp during the time this controversy was going on, if uttered in good faith, DeCamp believing them to be true, would be justified, unless express malice, personal malice, personal ill-will, or malice in fact is shown.

" It is contended on the part of the plaintiff that some of these words were not spoken by the defendant during this controversy, and were spoken of and concerning the plaintiff independently of his position as burgess, and not in any way concerning this controversy. If that is so, if at any time before this controversy arose DeCamp, called Rowand a thief, said he would steal a thousand dollar bond, for instance, on the 4th of January 1875 (although the utterance on that date is disputed), the plaintiff would be entitled to recover. DeCamp's right to speak what he honestly believed to be true existed only under the circumstances alleged here on his behalf. If what he said was said under these circumstances, and so understood by the parties to whom it was addressed, he is protected, unless express malice or malice in fact is shown. The defendant must have acted in good faith in the utterance of these words; he could not go around and use that language maliciously, and with intent to injure Rowand, with personal ill-will and hate and spite.

" He contends that there was no personal ill-will outside of this bond question, and has called a great many witnesses to testify to that. On the other hand the plaintiff offers evidence to show that

[Rowand v. DeCamp.]

in September he wrote a letter to the defendant asking him to quit calling him (the plaintiff) a thief and bankrupt, and that after receiving that letter DeCamp repeated this language. Also, evidence what DeCamp said to one witness that he had a paper in his safe that would send him (Rowand) to the penitentiary, and to another witness that he would 'ruin him.' This testimony bears on the question of express malice, or malice in fact, and if this is shown the law will not shield the defendant.

"There is one other fact, already alluded to, to which you must direct your attention, that is, that before this difficulty at all the defendant called Rowand 'a thief' or 'a damned thief,' and added that he had stolen a thousand dollar bond. If that is true it is totally unjustifiable, and your verdict must be for the plaintiff. He had no right to speak those words except under the circumstances and in the light of the instructions I have given you.

"In conclusion, the law makes you the exclusive judges of the facts, and we are very glad it does. It is your duty to carefully consider the testimony. If you should believe that the defendant used the words 'he is a thief,' 'a damned thief,' as alleged, without any explanatory words showing a meaning other than the common ordinary meaning, they are actionable *per se*, and the law implies damages. They must have been spoken however within one year from the beginning of this suit, which was December 27th 1875. But if you believe that these words were spoken in good faith concerning the burgess, acting in his official capacity, the defendant believing what he uttered, he is protected unless express malice is shown, malice in fact, ill-will, or that the words were uttered before this trouble commenced, all of which the plaintiff contends has been shown. If you should conclude that the words spoken were justifiable, were spoken of the plaintiff in his official capacity, that there was no personal malice, you should return a verdict simply for the defendant; but if you should find for the plaintiff on any of these points, the last question will be the measure of damages. The measure of damages in an action of slander is first, compensation for the injuries received; then if there are circumstances of aggravation or express malice is shown, you can give punitive damages, such damages as you may think proper under all the circumstances. The question of damages in an action of slander is one peculiarly for the jury. You take the case with these instructions and give it a careful consideration, remembering that many of these questions of fact are hotly contested on either side, particularly the question of the selling of the lots to the borough."

Verdict for plaintiff with six and a quarter cents damages. He then took this writ and alleged that the court erred, as set forth in the assignments of error noted above.

*Marshall Swartzwelder* and *Robb & Fitzsimmons*, for plaintiff

[*Rowand v.* DeCamp.]

in error.—When the circumstances of the publication are controverted or uncertain a case is presented in which the court is to instruct the jury what condition of circumstances would under the publication be privileged, and then leave it to the jury to determine the character of the publication : Duncan *v.* Brown, 15 B. Mon. 136 ; Townshend on Slander and Libel, sects. 287, 288, pl. 387 ; Durby *v.* Ouseley, 36 Eng. Law and Eq. R. 518 ; Wenman *v.* Ash, 13 C. B. 836.

.Although the specific charge upon which the plaintiff relied was . of the date of January 4th 1875, long prior to the issue of any borough bonds for the improvement of ·the streets and erection of a town hall, yet under the second point, language used long subsequent to January 4th 1875, by the defendant, must be taken into account by the jury in construing the language used by the defendant of January 4th 1875.    Such a position can certainly not be supported: Smith *v.* Smith, 3 Wright 441 ; Barr *v.* Hack, 46 Iowa 308 ; Garrett *v.* Dickerson, 19 Md. 418.    The third point of defendant, being the third assignment of error, lays down a principle which, if law, would sap the foundation of any society sufficiently human to require public officers or servants.    To say that " the citizen is protected whenever he speaks the truth as he designs to be understood, and as he is understood by his hearers, no matter what may be the form of expression or the language employed," is simply to say that the private character and reputation of any citizen, no matter how honorable or just he may be, who may serve as officer or public servant, is· open continually to the scurrilous attacks of abandoned and dissolute men.

It is the duty of the court to pass upon a question of privilege, and the jury to find the facts under the charge of the court. Whether words sufficient in themselves· to raise the legal presumption of malice, are privileged, is a question of law, determinable from the circumstances attending their utterance : Garrett *v.* Dickerson, 19 Md. 418.

It is not competent for the defendant to prove that a rumor prevailed in the neighborhood of the truth of the words spoken by him : Miller *v.* Varner, 2 Pitts. 149 ; Chapman *v.* Calder, 2 Harris 365 ; Pease *v.* Shippen, 30 P. F. Smith 513.

*Hampton & Dalzell* and *Thomas·M. Marshall*, for defendant in error.—That the facts in controversy were justly submitted under proper legal direction by the court is manifest.    If the words were spoken of and concerning Rowand as burgess, in a matter free to public debate and criticism, good faith is the rule, good faith in an honest expression of the public conduct of a public officer.    It is complained that this court did not assume the function of the jury aud decide the fact.    DeCamp had testified that all his utterances were in regard to, and touching the public conduct of Rowand as

[Rowand *v.* DeCamp.]

burgess. The court could not decide the fact, it was for the jury. The specific charge of January 4th 1875, was specifically denied by DeCamp. The authorities cited by counsel are against them. When the language is certain and undisputed, as in a printed libel, it is for the court to pass upon the character of the publication, but when as here, the speaking of the words and the circumstances of the speaking are in controversy, it must be left to the jury to find the facts.

In all cases of slander or libel excusable on the ground of being privileged, "all the facts and circumstances may be given in evidence by the defendant to show probable ground and to rebut the idea of malice."

Numerous authorities are cited in the opinion, and the question is settled in Pennsylvania that evidence tending to prove the truth of the charge may be given in evidence, under the general issue alone, when words are spoken of a public servant in his official capacity.

The case of Chapman *v.* Calder was followed by the learned judge who tried this case. It governed and controlled the law of the case.

Mr. Justice TRUNKEY delivered the opinion of the court, January 5th 1880.

This cause was so fairly submitted that not a phrase of the general charge is alleged to be erroneous; and the plaintiff does not complain of the answers to his points, which embraced everything on which he desired special instructions. Therefore, no just complaint can be made that matter was omitted necessary to enable the jury to understand the case. The defendant's points, and answers thereto, must be considered with the charge, which explains and qualifies them. Indeed the charge and the points of both parties, which were affirmed, together constitute the instructions to the jury, and one part should not be taken without reference to the others. Had the verdict been for defendant, perhaps some of the assignments of error would be sustained—being in favor of the plaintiff, we cannot say the jury were misled.

In the disposition of this case we do not affirm the right of a citizen to call a public officer a thief, under such circumstances that the word would likely be understood in its ordinary sense by the hearer.. When a man exercises the citizen's right to denounce the action of a public officer, it is unlawful for him to make a false and malicious charge of crime or misdemeanor in office. We think the learned judge of the Common Pleas intended to be so understood; and although he affirmed the defendant's third, fifth and ninth points, which seem to recognise the right to denounce an officer as a thief and his transaction as a theft, yet he told the jury that to say of a man in office that he is a thief is as bad a slander as to

[Rowand *v.* DeCamp.]

say it of a private citizen and probably worse; that if the defendant used the words as alleged without explanatory words, showing other than their ordinary meaning, they are actionable *per se*, and the law implies damages; and (plaintiff's fourth point), if the words were privileged, and malice in fact be shown, the verdict should be for the plaintiff. The jury could not have found the words were privileged, for there was express instruction that if spoken of the plaintiff in his official capacity, without malice, to find for the defendant. Hence, if it be true, as urged, that the court should say whether the words were privileged, the omission to do so did the plaintiff no harm. No statute or rule was cited which obligates a citizen when discussing the conduct of public servants in their official capacity, who speaks the truth as he designs to be understood and as he is understood by his hearers, to employ any prescribed form of expression or language. So long as he speaks the truth, in words meaning nothing else, he is not liable in damages, whether his language be chaste or vulgar, refined or scurrilous. The style of speech seems to be governed by the taste of the speaker and not by the civil law. No error is found in the matter set forth in the second, third and fifth assignments which can avail the plaintiff, he having obtained the verdict.

It is assigned that the affirmance of the defendant's second point must have led the jury away from the issue which centered in the words proved by Houghteling. As a general proposition that point is sound. If it needed remark to explain its application to the case, it is found in the charge where it is said, among other things, that if, before the difficulty, the defendant called the plaintiff a thief, adding that he had stolen a thousand dollar bond, it was totally unjustifiable, and the verdict must be for the plaintiff. Moreover, the answer to plaintiff's first point directly and positively affirmed his right to recover if the facts therein stated were true.

On June 10th 1875, the plaintiff, then the burgess of Verona, conveyed two lots to W. F. Hope in consideration of a promissory note for $1500; and, on the 30th of December thereafter, Hope conveyed the same lots to the borough for $1500 in borough bonds. Hope exchanged the bonds with plaintiff for the promissory note. Before the plaintiff conveyed to Hope he had offered two lots to the borough for $1500, and, by the end of the year, the lots were vested in the borough, the bonds in the plaintiff, and Hope had neither paid, made nor lost money. According to the testimony of nearly a half-dozen witnesses, in 1875, the lots were worth about $500— one-third the amount of bonds given for them—two or three witnesses said they were worth $1500. The plaintiff called in chief numerous witnesses to prove words spoken by defendant at various times down to the end of the year 1875, who, on cross-examination, said they were uttered after the controversy had arisen respecting the bonds. Property owners had become alarmed about a proposed

[Rowand *v.* DeCamp.]

issue of borough bonds, and requested the defendant to oppose it for them as well as himself: the dispute between him and the plaintiff soon became violent. Notwithstanding the perverted use of the word "theft" where it occurs in defendant's seventh and eighth points, it certainly applies to the transaction described in said points; and, in view of the evidence, we are not convinced their affirmance was error.

The ground covered by the plaintiff's testimony opened the door for the defendant to show there was a controversy about the propriety of issuing the bonds, and the circumstances under which the words were uttered: Chapman *v.* Calder, 2 Harris 365; Stees *v.* Kemble, 3 Casey 112; Minesinger *v.* Kerr, 9 Barr 312. The evidence admitted had no tendency to prove the truth of the words set out in the declaration, and was not received for that purpose. It was to show the circumstances under which the words were spoken, and was clearly admissible.

We have not been unmindful of the point urged in argument, that though the plaintiff obtained a verdict he failed in recovering punitive damages because of erroneous answers to defendant's points. We are of opinion the instructions fairly left the question of damages to the jury. Possibly the result was more on account of the personal satisfaction attempted to be taken of the defendant in a public conveyance, before the suit was commenced, than of any supposed error by the court. Jurors usually have common sense.

Judgment affirmed.