# Wharen, Appellant, *v.* Dershuck.

*Trial—Instruction to jury—Conduct of parties—Action for libel.*

1. The trial court committed no reversible error in charging the jury in a libel suit, as follows: "It is rather a tame affair on the whole for a libel suit, which we expect to be a belligerent performance. Both the lawyers and the parties have behaved throughout with exemplary gentleness and gentility, and the hair has not been flying or the blood flowing at all in connection with the proceedings, being tried in a very genteel and expeditious manner, starting yesterday afternoon I think, and being now near its conclusion."

*Libel—Implied malice—Publishing article known to be false.*

2. An instruction in a libel case that if the defendant knew the article to be false when he published it, that would be implied malice, is not reversible error on the theory that it gave the jury to understand that if he did not know it to be false, he would be free from blame.

*Libel—Publishing account of public meeting—Probable cause—Privileged communication.*

3. An instruction in a libel case for publishing a false account of a public meeting, that if the defendant did not know the article to be false, the implication of malice could not be drawn from the article itself as in ordinary cases of libel, if it was based upon reasonable or probable cause, for in such a case it was a privileged communication, is not reversible error.

4. In such a case an instruction that "We say to you further so far as you can observe, either from the surrounding circumstances or from the article itself, the motive and the manner were proper, and therefore all the requirements of a privileged communication would be met, if it was not known to be false," is not reversible error.

*Libel—Malice — Letter acknowledging mistake — Publication of retraction—Instruction to jury.*

5. It was not error to charge the jury that "in connection with the subject of malice I may refer here to the circumstance that as soon as the matter or within a reasonable time, so it seems to the court, after the matter was brought to the attention of the newspaper, of the reporter and of its editor, there was not only a letter on the 9th of September, acknowledging the mistake and offering an explanation of it, but there was also on the 29th of September, in the paper itself, published a retraction, making full amends as far as that goes; of course not destroying the liability, if there is a

liability, but nevertheless, in the judgment of the court, going as far as could be reasonably expected in a way of a retraction and in the way of restoring the plaintiff to the public esteem, if he had lost that esteem."

*Libel—Instruction to jury—Time of bringing suit after publication—Delay in trying case.*

6. It was not error for the court to instruct the jury in a libel case that no suit had been brought for the libel for eleven months after publication, and that "of course the first instincts of a man, who is really damaged by a libelous publication, is to go to law at once. He don't waste time about it. This suit was not brought for eleven months. Then it was not brought to trial, as I have already suggested, for seven years, 1917, publication in 1910, almost six years after suit brought, almost seven years after the article was published."

*Damages—Libel—Mitigation — Letter acknowledging mistake—Retraction—Plaintiff holding same position—Increased compensation—Publication without investigation.*

7. Where the defendant published in a newspaper on August 8th a false account of a meeting of the school board it was not error for the court to instruct the jury that a letter of explanation acknowledging the mistake dated September 9th, and the retraction in the newspaper on September 29th, was a sufficient and reasonable retraction and vindication as far as it went.

8. The court committed no error in charging the jury that "nevertheless it is proper for you to consider that there was a retraction and that the behavior of both the reporter and of the editor—subsequent behavior independent of the article itself—is entirely free from any exhibition of actual malice, on the contrary, marked by evident desire to make amends, accompanied by an explanation, the reasonableness of which is for you. The plaintiff still holds the position as mail carrier, with increased compensation. There has been no loss of public or private esteem under the evidence here, he is just as well regarded by the public as he ever was. In other words, to sum up, there is no proof in this case of actual damage, actual damages in dollars and cents."

9. The trial court committed no reversible error in refusing to affirm a request to charge that "if you find the defendant published the article complained of without any prior investigation, that it is false, then your verdict should be for the plaintiff."

*Libel—Malice—Evidence—Discovery of falsity—Time of making retraction—Threatened legal proceedings.*

10. It was not reversible error for the trial court to refuse to affirm a request to charge that "if you find that the defendant did not

make any retraction in his paper, when the falsity of the article was called to his attention, but waited until threatened with legal proceedings; and also find for the plaintiff, then such action may be considered in connection with all other evidence in the case, in determining whether there was actual malice or illwill toward the plaintiff."

*Libel—Responsibility of publisher for act of agent—Malice—Punitive damages.*

11. The trial court committed no reversible error in refusing to affirm a request to charge that "if the jury find for the plaintiff, and find that the reporter was the duly authorized agent of the defendant in procuring news and in sending the article complained of, and that the reporter had no ground to believe the truth of the article, but was actuated by malice and illwill toward the plaintiff, then the defendant is responsible for such malice of his agent, and you may award exemplary or punitive damages."

*Libel—Malice—Mistaken identity—Inquiry as to identity of person.*

12. It was not reversible error for the trial court to affirm a request to charge that "if the jury believe that the reporter of the Plain Speaker, in good faith, made inquiry from a responsible and reputable person as to the identity of the person who informed the school board of the facts contained in the alleged libel, and understood his informer to say such person was in fact Wharen, the plaintiff, then the jury may accept such circumstances to rebut any inference of malice or negligence."

Decided by a divided court.

Argued April 14, 1919. Appeal, No. 87, Jan. T., 1919, by plaintiff, from judgment of C. P. Luzerne Co., Oct. T., 1911, No. 388, on a verdict for defendant in the case of George W. Wharen v. W. C. Dershuck. Before Brown, C. J., Moschzisker, Frazer, Simpson and Kephart, JJ.

Affirmed by a divided court.

Action in trespass for publication of a libel.

Fuller, P. J., charged the jury as follows:

This is a civil action for libel, as distinguished from a criminal prosecution for libel, seeking damages for the

plaintiff in the civil suit, rather than the punishment for
the offender in a criminal prosecution.

It is instituted by George W. Wharen, spelled W-h-a-r-
e-n—George Washington Wharen seems to be his full
name, and I state this because it has a bearing in connec-
tion with the evidence against W. C. Dershuck, the editor
and proprietor of a daily paper published at Hazleton,
known as the Plain Speaker, for a certain article issued
on August 8, 1910, reflecting upon plaintiff's behavior as
a mail carrier. While the article appeared in the paper
of August 8, 1910, this action was not brought until July
7, 1911, eleven months afterward, and it now appears for
the first time so far as we know upon the trial list of the
court, almost seven years since the paper was published.

[It is rather a tame affair on the whole for a libel suit,
which we expect to be a belligerent performance.

Both the lawyers and the parties have behaved
throughout with exemplary gentleness and gentility, and
the hair has not been flying nor the blood flowing at all in
connection with the proceedings, being tried in a very
genteel and expeditious manner, starting yesterday after-
noon I think, and being now near its conclusion.]   (1)

It would seem that on August 6, 1910, there was a meet-
ing of the school board of Foster Township and at that
meeting a petition was presented by certain citizens com-
plaining of a certain school teacher, for sundry causes,
and among other causes of complaint was that she
wrote too many letters, which, I am free to say, might be
considered a weakness of a school teacher, and this com-
plaint led to discussion.

Plaintiff was present and also George McGee, the re-
porter of this newspaper, was present with a number of
others—fifteen or sixteen altogether at the gathering.
On August 8th, two days afterward, 1910, in the Plain
Speaker appeared the following: "At this juncture,"—
now of course there is nothing to show what the juncture
was, they just start out with that—"At this juncture"—
but referring no doubt, in the light of the evidence ad-

duced here to the complaint about the teacher and to the discussion which ensued—"At this juncture Warren, (spelling the name W-a-r-r-e-n, meaning thereby the plaintiff), the mail carrier, volunteered the information that the box in the vicinity of the Oley Valley school was always loaded down with mail sent out by the teacher. This outburst of department information amazed the members of the board. They felt that Warren, a sworn government employee had committed a serious offense against the regulations of the Post Office Department, by blabbing out information that his oath and the law enjoins him to withhold. That Warren, (still spelled W-a-r-r-e-n, accompanied with the innuendo, meaning thereby the plaintiff), may be compelled to answer to the department for his part in the drama, was the opinion expressed by a number of people present at the meeting, who felt that the whole delegation was animated by some ulterior motives and unduly biased against the teacher."

The person directly responsible for the article was Mc-Gee, the reporter. The defendant personally was not connected with it at all, in fact he was away from home on a visit south. He had no further connection with the publication of the article at all, but nevertheless he would be responsible, in law, for whatever appeared in that newspaper, either when absent or when present, if he was editor or publisher.

Now the disposition of this action by you, and our submission of it to you, is covered by an act of assembly, which provides, that there shall be no recovery in civil action of this character on account of the libel or alleged libel unless it was malicious or negligent; but if the jury find it to be malicious or negligent they may allow such damages as they deem proper. That is the act of assembly which is the foundation of the case. Now you must find—in order to find a verdict in favor of this plaintiff and against the defendant, it must be found first that the defendant, Mr. Dershuck, was the editor and publisher of this newspaper, Plain Speaker, and on that there can be

no doubt. It is not denied. It is virtually admitted; not expressly admitted. Should you find as the initial fact of the case, namely, that the defendant was editor and publisher of this paper, and therefore responsible for any article which appeared in the same and was uttered, then you must find in the second place that this article was published of and concerning the plaintiff, Geo. W. Wharen.

He would not be entitled to recover anything unless the libel was about him and so understood.

Now you have observed in my reading of the article that it refers to the individual as Washington A. Warren —spelling the name W-a-r-r-e-n and not W-h-a-r-e-n—and the name Warren is repeated several other times in connection with the article.

The true name of the plaintiff is George Washington Wharen. It is pronounced, would seem to be pronounced Warren.

*      *      *      *      *      *      *      *      *

Now we come to some most vital and not so easily determined ingredients of plaintiff's case, for you must find in the fifth place that the article was malicious, published with malice by McGee.

Of course so far as Mr. Dershuck is concerned, there is not the slightest proof of actual malice at all. It is only legally imputed, so far as he is concerned from the acts of McGee, but he is responsible for McGee's acts. [Now malice we all know to be an evil mind, with intention to do injury to somebody, without any justification or excuse, and the law recognizes two kinds of malice, [one of] which is actual malice—that is where it really sets out to hurt another, to injure him, to do him an injury as if McGee were the personal enemy or was at that time the personal enemy of this plaintiff and in order to injure him deliberately made the publication in pursuance of a threat or anything of the kind, that would be actual malice, express malice.

Then the law recognizes another kind of malice, namely implied malice, not express, but implied from certain circumstances. I will draw them to your attention.

Generally speaking there are two kinds of malice, malice in fact and malice in law, either of them would sustain an action for libel.

Now did McGee have actual malice? You may ask yourselves the question first. As I say there is no proof of any illwill or intention on his part, didn't even know the plaintiff.

He attended that meeting, as he had a right to do, public meeting of the school board, for the purpose of recording the public proceedings there, as he had a right to do, and it does not seem to the court as if you could find from any of the circumstances actual or express malice.

Nevertheless if McGee knew the article to be false— and here is one of the vital questions of fact in the case for you to answer—if he knew it to be false when he made the statement, that would make it malice in law. That would be implied malice. In the absence of any proof to show express malice or actual malice you as jurors would not only have the right, but it would be your duty to infer malice if McGee knew the article to be false. Now did he know it to be false? It is for you to say.] (2) The case has been argued to you most ably by counsel in the case. We leave that question to you without any comment or discussion. [We simply say if you find he knew it to be false, then it was a malicious publication and this requirement of the plaintiff's case would be met; but if he didn't know it to be false, the implication of malice could not be drawn from the article itself, as in ordinary cases of libel, because in my judgment—and we say it to you as a matter of law—if it was based on reasonable and probable cause, if the article was published, if the statement incorporated was made upon reasonable and probable cause, it was a privileged communication.] (3)

Now that is a legal proposition entirely for the court. A communication is privileged when made upon a proper occasion, from a proper motive, in a proper manner and based upon reasonable and probable cause. And when so made in good faith, the law does not imply malice as in the ordinary case of libel from the mere proof of what is said about the man, and actual malice must be proved. Now I say concerning this article that the occasion was proper. Here was a public meeting of the school board, open to the public, rightfully open to the public and matters of public interest being discussed, behavior of a teacher, and we say without any discussion or debate on the proposition that it was a proper occasion.

[We say to you further, that so far as you can observe, either from the surrounding circumstances or from the article itself, the motive and the manner were proper, and therefore all the requirements of a privileged communication would be met if it was not known to be false (which of course would destroy the privilege as we have already charged you), or if though untrue it was made upon reasonable or probable cause.] · (4)  So if you do not find that McGee knew it to be false, you must find want of reasonable or probable cause, that is negligence, in order to sustain a recovery in an action by the plaintiff, and that brings us to the next ingredient or requirement, negligence.  It must be found to be either malicious in the light of the instructions which I have just given you on that subject, or negligent in the light of the instruction which I now give you.

[In connection with the subject of malice I may refer here to the circumstance that as soon as the matter or within a reasonable time, as it seems to the court, after the matter was brought to the attention of the newspaper, of the reporter and of its editor, there was not only a letter on the 9th of September acknowledging the mistake and offering an explanation of it, but there was also on the 29th of September in the paper itself, published a retraction, making full amends as far as that goes; of

course not destroying the liability; if there is a liability, but nevertheless, in the judgment of the court, going as far as could be reasonably expected in a way of retraction and in the way of restoring the plaintiff to the public esteem, if he had lost that esteem.]   (5)

\*    \*    \*    \*    \*    \*    \*    \*    \*

Now from all the testimony, gentlemen of the jury, I think you can clearly conclude, first, that there was a complaint made there of this teacher for among other things, excessive writing of letters and use of the mail box.

There can't be any question about that in my mind.

[Second, that there was a reference to the mail carrier, whoever he might be, as authority for the statement.

Third, that this mail carrier, the plaintiff, Geo. W. Wharen, was present and did not repudiate the statement.]   (6)

[Fourth, this is not so clear, and is for you to say, and I am putting it to you with a perhaps—perhaps that information was given by somebody present and the impression was produced in good faith in the mind of McGee that this plaintiff made the statement.]   (7)

Now I put it with a perhaps, because it is not clear as the others.

It is for you to determine from the weight of the credible testimony as you believe it, but you may find from the testimony if you so conclude.

[Then fifth we have the testimony or derivable therefrom the consideration that while the plaintiff himself did not make the statement imputed to him, others made it about him, about the mail carrier, possibly referring to another mail carrier, but possibly referring to him, and perhaps easily applicable to him, and the newspaper would have a perfect right to publish as part of the proceedings all of those statements that were actually made. There is no doubt about that, and these statements published in the paper would have hurt the plaintiff just as

the direct imputation to him, that he made the statements.

At least so it appears to the court. It is for you to say, leaving that consideration and its bearings upon the malice of the controversy entirely to you. Others making the statement about him and the statement actually made by others about him, this newspaper would have had the right to print. Now would not that have been just as damaging as the statement? We leave it to you.] (8)

* * * * * * * * *

[Now no suit as I have already mentioned, was brought for this libel for eleven months. Of course the first instinct of a man who is really damaged by a libelous publication is to go to law at once. He does not waste time about it. This suit was not brought for eleven months.

Then it was not brought on to trial, as I already suggested, for seven years, 1917, publication in 1910, almost six years after suit was brought, almost seven years after the article was published.] (9)

[Then we say to you, as we have already said, we state again in this connection on the matter of damages, that the letter of September 9th and the newspaper retraction of September 29th was a sufficient and reasonable retraction and vindication so far as it went.] (10)

Of course it does not necessarily preclude recovery here if the requirements are met, as we have outlined them to you, in all instances.

[Nevertheless it is proper for you to consider that there was a retraction and that the behavior of both the reporter and the editor—subsequent behavior independent of the article itself—is entirely free from any exhibition of actual malice, on the contrary, marked by an evident desire to make amends, accompanied by an explanation the reasonableness of which is for you.

The plaintiff still holds the position as mail carrier, with increased compensation. There has been no loss of public or private esteem under the evidence here, he is just as well regarded by the public as he ever was. In

other words, to sum up, there is no proof in this case of actual damage, actual damages in dollars and cents.] (11)

[The third request we refuse without reading. It was: "If you find that the defendant was the owner and publisher of the Plain Speaker, that the article complained of was published in the Plain Speaker, that it referred to the plaintiff, that it is false, your verdict should be for the plaintiff."] (12)

The fourth request, "If you find that the defendant was the owner of the Plain Speaker, that George McGee was the duly authorized reporter of the Plain Speaker, that he reported the article complained of in the due course of his employment, then the defendant is responsible to the plaintiff for the actions of George McGee in so doing." We affirm that request. It is only a statement of the law of principal and agent. Mr. Dershuck as editor and publisher of the Plain Speaker would be responsible for what his reporter did in connection therewith.

[The sixth we refuse without reading. It was: "If you find the defendant published the article complained of, without any prior investigation, that it is false, then your verdict should be for the plaintiff."] (13)

The same is true of the 12th, 13th, 14th, 15th and 16th requests, all of which we refuse without reading [which are as follows]:

[Twelfth. "If you find that the defendant did not make any retraction in his paper, when the falsity of the article was called to his attention, but waited until threatened with legal proceedings; and also find for the plaintiff, then such action may be considered in connection with all other evidence in the case, in determining whether there was actual malice or illwill toward the plaintiff."] (14)

[Thirteenth. "If the jury find for the plaintiff, and find that George McGee was the duly authorized agent of the defendant in procuring news and in sending the article complained of, and that George McGee had no ground

to believe the truth of the article, but was actuated by malice and illwill toward the plaintiff, then the defendant is responsible for such malice of his agent, and you may award exemplary or punitive damages."]   (15)

[Fourteenth. "In determining whether the reporter, George McGee, was actuated by actual malice or illwill, you may consider all the testimony bearing on the matter, the size of the room, the number of people present, the similarity of the plaintiff and Mr. Schultz, and the fact that the plaintiff later addressed the meeting and that Mr. McGee correctly identified him at that time."]   (16)

[Fifteenth. "You may also consider as to whether George McGee was actuated by malice or illwill, the character of the corroboration of the statement of Mr. Fairchilds, as to whether it showed by its terms that it was made by the mail carrier or by some one else."]   (17)

[Sixteenth. "Your verdict on the whole evidence should be for the plaintiff."]   (18)

The defendant's requests are as follows:

1. "In order to justify a recovery by the plaintiff in this case the jury must be satisfied by a preponderance of the credible evidence that defendant published the alleged libelous article either maliciously or negligently." That is true.  We have so instructed you.

[2. "If the jury believe that George McGee, reporter of the Plain Speaker, in good faith made inquiry from a responsible and reputable person as to the identity of the person who informed the school board of the facts contained in the alleged libel, and understood his informer to say such person was in fact Mr. Wharen, the plaintiff, then the jury may accept such circumstance to rebut any inference of malice or negligence."

Well we affirm that.  Of course the facts are for you to find.  All depends on what occurred at the meeting; what was said and whether what was said, actually said, justified McGee in concluding that the plaintiff made the statement, and acting under that impression that he published the article.]   (19)

[3. "The jury is instructed as a matter of law that there is no proof of express malice in this case." That request is affirmed.]   (20)

Verdict and judgment for defendant.

Plaintiff appealed.

*Errors assigned* were, among others, (1-11) charge to jury; (12-20) answers to points.

Chas. F. Wharen, for appellant.

John H. Bigelow, with him R. J. O'Donnell, for appellee.

PER CURIAM, May 5, 1919:

In this action for libel the verdict was for the defendant, followed by judgment thereon.   After due consideration of all the assignments of error the majority of the court are of opinion that they disclose no reversible error, in view of all the testimony in the case, and the judgment is, therefore, affirmed.