**LAL, Amrit, Appellant,**

v.

**CBS, INC.**

No. 83–1103.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Jan. 12, 1984.

Decided Jan. 19, 1984.

Rehearing and Rehearing En Banc Feb. 17, 1984.

Eugene A. Steger, Jr., Steger & Howell, Ltd., Kennett Square, Pa., for appellant.

James D. Crawford, Kenneth A. Jacobsen, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for appellee.

Before ALDISERT, HIGGINBOTHAM and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

This is an appeal in a diversity action for defamation (Count I) and trespass (Count II), arising out of the production and publication of a news report aired by the defendant, CBS, Inc. (CBS), through WCAU–TV, a station operated by CBS in Philadelphia. The district court granted CBS' motion for summary judgment as to Count II and, at the close of all the evidence, directed a verdict for CBS as to Count I. Plaintiff appeals from both orders of the district court, as well as from the court's denial of plaintiff's motion to compel production of the notes and tapes of the reporter who prepared the broadcast.

I.

Plaintiff, Amrit Lal, a professor of political science at Cheyney State College, owns several houses in West Chester, Pennsylvania. The house located at 217 East Nield Street (Nield Street house) was leased in March 1980 to five students attending West Chester State College. About March 9, 1980 Lal learned that Ellen Sands, editor of the *Quad,* the student newspaper at West Chester State College, was preparing to publish a story in the March 18 issue about conditions at properties Lal owned in West Chester. On March 17, 1980 Lal filed suit in the Court of Common Pleas of Chester County against Sands, West Chester State College, and others, seeking, among other things, to enjoin publication of the article until he had an opportunity to review and respond to it. At a hearing on March 21, 1980, which lasted only a few minutes, the court granted Lal's request to withdraw his petition for an injunction as moot because the *Quad* article had been published as scheduled on March 18, three days earlier.

Roseanne Cerra, a news reporter for WCAU–TV, and a WCAU–TV sound technician and photographer were present at the hearing. At its conclusion, they conducted videotaped interviews of Lal, Sands, and the president of West Chester State College concerning the *Quad* article and Lal's suit seeking prior restraint of its publication. In preparing the story, Cerra also visited the Nield Street house. After receiving permission from tenant Amy Wertz to inspect and film the interior of the house, Cerra and her crew filmed certain areas. Finally, Cerra and her two colleagues visited the offices of the *Quad* at West Chester State College and filmed the staff at work there. That evening, Cerra's report was aired during the 5:30 p.m. edition of WCAU–TV's news telecast. The report included a statement, attributed to the ten-

ants, that "their many complaints of leaking roofs, faulty wiring and other eyesores were never answered." The video portion of the report shown simultaneously with this statement contained views of the house, in particular, a water-stained first-floor ceiling, an unshaded electric light bulb suspended from the ceiling, and exposed insulation on the back porch of the house.

In Count I of his complaint Lal contends that the broadcast was false and known by CBS to be false, and that the purpose and effect of the broadcast was to portray him as a slumlord. In particular, Lal maintains that the house had neither a leaking roof nor faulty wiring on the date of the broadcast. CBS replies that its broadcast came within the "fair report" privilege, a recognized common law privilege, accepted as well by the Pennsylvania courts, for reports on judicial proceedings and other official action. Under this privilege, the news media may publish accounts of judicial proceedings even when the report contains defamatory matter. CBS concedes that the fair report privilege is not absolute, however, and may be lost if the story is not fair and accurate or the defamatory material is published solely to cause harm to the person defamed. CBS argues it was entitled to the privilege because the news report fairly and accurately summarized the proceedings held on Lal's petition for preliminary injunction. Lal, on the other hand, argues that CBS exceeded the scope of the privilege by including in the news report matter that was extraneous to the judicial proceedings, especially the videotapes of the house. Lal maintains that the privilege is lost because the juxtaposition of the videotapes with Cerra's oral summary of the judicial proceeding destroyed the objectivity of the broadcast.

In Count II Lal contends that the entry by Cerra and the two other WCAU–TV employees into the Nield Street house was unauthorized and constitutes a trespass. CBS does not dispute that Lal's permission to enter the property was never obtained. However, the district court found that Cerra and her crew entered with the permission of the tenant in possession of the property, and granted CBS' motion for summary judgment on the trespass count. *Lal v. CBS, Inc.,* 551 F.Supp. 356 (E.D.Pa.1982).

Finally, Lal contests the district court's denial of his motion to compel discovery pursuant to Fed.R.Civ.P. 37 of Cerra's notes and tapes related to the March 21, 1980 news report on the ground that the material sought was privileged under Pennsylvania's shield statute, 42 Pa.Cons.Stat.Ann. § 5942 (Purdon 1982). *Lal v. CBS, Inc.,* 551 F.Supp. 364 (E.D.Pa.1982).

## II.

### A.

We look to Pennsylvania law to determine if CBS' broadcast fell within the scope of the common law "fair report" privilege as a report of a judicial proceeding. The Pennsylvania Supreme Court has recognized that "[i]f the ... account is fair, accurate and complete, and not published solely for the purpose of causing harm to the person defamed, it is privileged and no responsibility attaches, even though information contained therein is false or inaccurate." *Sciandra v. Lynett,* 409 Pa. 595, 600, 187 A.2d 586, 588–89 (1963); *see also Binder v. Triangle Publications, Inc.,* 442 Pa. 319, 324, 275 A.2d 53, 56 (1971).

Lal argues that the use of the videotape rendered the news story unfair or inaccurate. However, television is a visual medium and the mere fact that the report of a judicial proceeding is accompanied by videotape to illustrate that report does not constitute abuse of the privilege. There are circumstances under which the nature of the videotape material could constitute an abuse. *See, e.g., Purcell v. Westinghouse,* 411 Pa. 167, 191 A.2d 662 (1963) (distortion of court proceeding and inclusion of extraneous material in "documentary" constituted abuse). For that reason the trial judge in this case denied CBS' motion for summary judgment on the fair report privilege issue, as he later said "out of an abundance of caution", App. at 262a, and gave plaintiff an opportunity to show that there was de-

liberate distortion and sensationalism connected with the videotape. At the conclusion of plaintiff's case, the district court directed a verdict for defendant, finding that there was no evidence on which the jury could conclude that the video report of conditions at the house presented a distorted picture or caused a loss of the objectivity of the telecast. App. at 262a–69a.

■ The burden of proving abuse of the privilege rests with the plaintiff. *Sciandra v. Lynett,* 409 Pa. at 601, 187 A.2d at 589. The relevant inquiry, therefore, is whether the use of the videotape rendered the news story unfair or inaccurate. *See Medico v. Time, Inc.,* 643 F.2d 134, 146 (3d Cir.), *cert. denied,* 454 U.S. 836, 102 S.Ct. 139, 70 L.Ed.2d 116 (1981). *Williams v. WCAU–TV,* 555 F.Supp. 198 (E.D.Pa.1983). Viewing all the evidence in the light most favorable to the plaintiff, we agree with the district court that a jury could not reasonably find that CBS' account of the court proceedings was unfair or inaccurate. The inclusion of the videotape of the interior of the Nield Street house in the broadcast merely provided a visual representation to accompany the verbal description of the conditions that were the underlying subject of the dispute. There is no evidence that the addition of the filmed material to the verbal description so exaggerated and sensationalized the news account as to render it neither "fair" nor "accurate."

### B.

■ The district court found that Lal's trespass claim against CBS had no merit. Under Pennsylvania law the lessor of improved land who is out of possession of the property cannot maintain an action for trespass absent some injury to the lessor's reversionary interest. *See, e.g., Clark v. Smith,* 25 Pa. 137, 140 (1855); *Potts Run Coal Co. v. Benjamin Coal Co.,* 285 Pa.Super. 128, 135, 426 A.2d 1175, 1178 (1981). Moreover, the consent of the person in possession of the property to the entry onto the premises is a complete defense to a trespass action. *See F.A. North & Co. v. Williams,* 120 Pa. 109, 13 A. 723 (1888). It is undisputed here that the tenant in possession gave permission for Cerra and her crew to enter the premises and that there was no damage to the property as a result of the entry. It follows that no claim for trespass can be maintained by Lal.

■ Lal claims that in a written lease, the tenants agreed not to admit members of the news media to the Nield Street house. No such lease was submitted in opposition to the motion for summary judgment. Furthermore, even had the tenant given permission to enter in violation of an undertaking not to do so, there would still be no basis on which Lal, who was not in possession, could maintain a trespass action against CBS.

### C.

■ Finally, Lal argues that the district court erred as a matter of law in concluding that Cerra's notes and tapes were privileged under Pennsylvania's shield statute, 42 Pa. Cons.Stat.Ann. § 5942. In a diversity case we are bound to follow Pennsylvania law as construed by Pennsylvania's highest court. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 78–80, 58 S.Ct. 817, 822–823, 82 L.Ed. 1188 (1938); *Becker v. Interstate Properties,* 569 F.2d 1203, 1205–06 (3d Cir.1977), *cert. denied,* 436 U.S. 906, 98 S.Ct. 2237, 56 L.Ed.2d 404 (1978). As the district court noted, although the statute on its face protects only against compelled disclosure of the "source of . . . information," the Pennsylvania Supreme Court has read an earlier version of the statute, virtually identical to the present law, to include "*documents,* inanimate objects *and all sources of information.*" *In re Taylor,* 412 Pa. 32, 40, 193 A.2d 181, 185 (1963) (emphasis in original). Thus, in *Steaks Unlimited, Inc. v. Deaner,* 623 F.2d 264 (3d Cir.1980), we applied the reasoning of *Taylor* and found that the statute protected secondary sources as well as primary sources of a reporter's information. *Id.* at 277–79. Since this precedent provides an adequate non-constitutional basis to support the denial of the requested discovery of Cerra's notes and tapes because of the possibility they could lead to the

disclosure of a secondary source of information, we will not reach CBS' First Amendment argument.

For the foregoing reasons, we will affirm the judgment of the district court.