**Patterson v. Duquesne Light Company**

*James A. Ashton,* for plaintiffs.
*Russell Ober, Jr.,* for defendants.
*George E. Yokitis,* for KDKA-TV.

WETTICK, *A.J.,* October 28, 1985—This is a defamation action arising out of an incident in which Duquesne Light Company terminated electric services at an office and apartment building owned by plaintiff Aiken East Corporation. Wayne Van Dyne, an "investigative" reporter of KDKA-TV, investigated the incident. His investigation included a television interview with defendant Lawrence P. Galie, who served as a spokesperson for Duquesne Light Company. According to plaintiffs' complaint, Galie falsely alleged that plaintiff Alan Patterson was obtaining electricity from Duquesne Light Company without Duquesne Light Company's knowledge (i.e., theft of electric services by deception); that Patterson was in bankruptcy and did not pay his electricity bills; and that plaintiffs had wrongfully denied Duquesne Light Company access to this building, thereby necessitating the termination of electric services to the building.

Prior to the airing of the Galie interview, the tape was reviewed and edited by various employees of KDKA-TV, including its news director, James Hefner. As a part of his editing process, Hefner dis-

cussed the contents of the interview with counsel for plaintiffs. As a result of this conversation, Hefner deleted the defamatory portions of the Galie-Van Dyne interview prior to the airing of the Van Dyne report on September 18, 1984.

After plaintiffs instituted this action, they served KDKA-TV with a subpoena directing an official designated by KDKA-TV to appear for a deposition and to bring to that deposition the edited and unedited tapes of the Galie-Van Dyne interview. At this deposition, James Hefner (KDKA-TV's designated official) produced a transcript of the edited portion of the interview that was aired on September 18, 1984 and testified that the unedited version of the interview had been destroyed. Hefner was then questioned about the contents of the interview. He refused to testify, invoking the Pennsylvania Shield Law. The subject of this opinion and order of court is plaintiffs' motion to compel Hefner to give testimony concerning the contents of the full Galie-Van Dyne interview, including the material not included in the broadcast.

The Pennsylvania Shield Act reads as follows:

"Confidential communications
to news reporters

"*(a) General rule.*—No person engaged on, connected with, or employed by any newspaper of general circulation or any press association or any radio or television station, or any magazine of general circulation, for the purpose of gathering, procuring, compiling, editing or publishing news, shall be required to disclose the source of any information procured or obtained by such person, in any legal proceeding, trial or investigation before any government unit.

"*(b) Exception.*—The provisions of subsection (a) insofar as they relate to radio or television sta-

tions shall not apply unless the radio or television station maintains and keeps open for inspection, for a period of at least one year from the date of the actual broadcast or telecast, an exact recording, transcription, kinescopic film or certified written transcript of the actual broadcast or telecast."[1]

Through their motion to compel discovery, plaintiffs seek only the information provided to KDKA-TV by a disclosed source (i.e., a source whose identity was revealed in a broadcast). Also, this court may protect the identity of other sources by issuing an order permitting KDKA-TV to withhold any information concerning the Galie-Van Dyne interview that may reveal any other source. Thus, the issue raised by plaintiffs' motion to compel discovery is whether this legislation providing that the media shall not "be required to disclose the source of any information procured or obtained . . . in any legal proceeding" protects information given by a disclosed source.

This exact issue was decided by the Pennsylvania Supreme Court in In Re Taylor, 412 Pa. 32, 193 A.2d 181 (1963). In that case the Philadelphia Bulletin published an article discussing an interview with John J. Fitzpatrick, a former Democratic ward leader, describing political corruption involving the legislative and executive branches of the City of Philadelphia and members of the City Committee of the Democratic Party. An investigating grand jury subpoenaed newspaper personnel who refused to answer any questions or provide any information concerning the corruption described in the article. The trial court judge issued an order compelling the

---

1. The Pennsylvania Shield Law was originally enacted in 1937 (Act of June 25, 1937, P.L. 2123, §1, 28 P.S. §330) and is now codified at 42 Pa.C.S. §5942.

Bulletin to produce information concerning what Fitzpatrick told the reporters while permitting the Bulletin to withhold any other information because it could disclose the identity of other persons whom the Bulletin interviewed. The court reasoned that the Pennsylvania Shield Law protects the identity of sources and that the Bulletin had waived the privilege with respect to Fitzpatrick by identifying Fitzpatrick as a source of information presented in its article.

The Pennsylvania Supreme Court reversed the contempt order. It held that by identifying Fitzpatrick as its leading source, the Bulletin had not waived the privilege created by the Pennsylvania Shield Act as to information provided by Fitzpatrick that was not published. Instead, its publication operated as a waiver only as to publicly disclosed information provided by Fitzpatrick.

"If a court can select or direct newsmen in its or their judgment to select or delete what information is disclosed by the informer or to furnish the documents in full with only the names deleted which the newsman or the court sincerely believes should be deleted, the purpose, the object and the intent of the act will be *realistically* nullified. We therefore hold that a waiver by a newsman applies only to the statements made by the informer which are actually published or publicly disclosed and not to other statements made by the informer to the newspaper." 193 A.2d at 186 (Footnote deleted.) (Emphasis in original.)

The dissenting opinion of Mr. Justice Cohen in In Re Taylor establishes that the argument that plaintiffs are making to this court in this case was fully considered and rejected by the majority opinion.

"The purpose of this statute [The Pennsylvania Shield Law] is to encourage the flow of news from

persons who might otherwise fear the unfavorable publicity or retribution resulting from the revelation of their name as the source of the news story. This purpose is accomplished by permitting the newsman to conceal the name of the informant. In other words, *it is the name of the informant and not the information itself which is protected.* Once the name of the informant is revealed, the purpose and protection of the act is terminated.

. . .

"The majority confuses 'source of information' and 'information.' While the purpose of the act would lead me to limit the terms 'source' to animate as opposed to inanimate objects since only the former can be encouraged to reveal information, we are not concerned in this case with the revelation of the source of a news story. The *source* of the information was disclosed to the Grand Jury as John Fitzpatrick; what is now sought is the *information* given by Fitzpatrick. In reversing the contempt convictions, the majority rewrites the statute and permits appellants to conceal the information itself." 193 A.2d at 187. (Footnote omitted.) (Emphasis in original.)

Our appellate courts continue to follow in In Re Taylor. See Hepps v. Philadelphia Newspapers, Inc., 506 Pa. 304, 485 A.2d 374, 386-7 (1984). Also see Lal v. CBS, Inc., 726 F.2d 97 (3 Cir., 1984); Steaks Unlimited, Inc. v. Deaner, 623 F.2d 264, 278 (3 Cir., 1980).

Plaintiffs' remaining argument is that KDKA-TV waived the privilege because Hefner discussed the contents of the Galie-Van Dyne interview with persons not associated with KDKA-TV. Public disclosure of information which was not broadcast may serve as a basis for the waiver of the act's protections, particularly if the disclosure was widely dis-

seminated or was not necessary to prepare the broadcast. See In Re Taylor, supra, 93 A.2d at 186. But plaintiffs have offered no evidence to support their contentions that the contents of the unpublished portions of the Galie-Van Dyne interviews were publicly disclosed. Consequently, there is no factual basis to find that KDKA-TV waived its privilege.[2]

## ORDER

On this October 28, 1985, it is hereby ordered that plaintiffs' motion to compel discovery and for counsel fees is denied.

---

2. Because we conclude that any portions of the Galie-Van Dyne interview that were not broadcast are protected from discovery by the Pennsylvania Shield Act, we need not consider whether this information is protected by a qualified First Amendment privilege. See, e.g., Continental Cablevision v. Storer Broadcasting Company, 583 F. Supp. 427 (E.D., Missouri, 1984); Miller v. Mecklenburg County, 602 F. Supp. 675 (W.D., North Carolina, 1985).