## Costello v. Long, Appellant.

*Evidence—Conflicting testimony—Action against jeweler—Substitution of cheap stone for diamond—Reputation—Evidence.*

In an action against a jeweler to recover the value of a diamond, left with the defendant's clerk to be set into a ring, and for which the defendant claimed that a cheap stone had been substituted by the defendant or his clerk, the case is for the jury where the testimony of the plaintiff and the defendant is in direct conflict.

In such a case it is not error to permit a pawnbroker, a witness for the plaintiff, to testify that a diamond of a kind and of a value described by plaintiff had been submitted for his inspection by plaintiff's husband the day before it was taken to defendant's shop.

Where a witness is asked an improper question, in order to attack his credibility, but the answer is favorable to himself, it is not proper to introduce evidence as to his general reputation for truthfulness.

Evidence in support of the general character of witnesses is not competent until their general character has been assailed. Every witness puts his character in issue; until evidence tending directly to impeach it is produced, the law presumes it to be good and therefore testimony to prove it good is superfluous.

Argued Oct. 15, 1915. Appeal, No. 51, Oct. T., 1915, by defendant, from judgment of Municipal Court Philadelphia Co., Nov. T., 1914, No. 712, on verdict for plaintiff in case of Mary Costello v. George Long. Before RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ. Affirmed.

Trespass to recover the value of a diamond. Before BONNIWELL, J.

At the trial it appeared that on September 16, 1914, the plaintiff took an unmounted diamond, as she claimed, to the defendant's shop and left it with his clerk, Archibald Bryson, to have mounted in a ring. When the ring was returned to her, she claimed that a cheap white sapphire stone had been substituted in place of the diamond. The evidence of the plaintiff and defendant was in direct conflict.

When Morris J. Platt, a pawnbroker, called as a witness by the plaintiff, was on the stand, he was asked this question:

Q. Did you see Mr. Costello the plaintiff's husband here at your store?

A. Yes, sir.

Q. Did he come into your place on or about September sixteenth, 1914, with a stone?

(Objected to. Objection overruled. Exception for the defendant.)   (1)

Q. Did he bring a stone there for your examination to appraise its value?

A. Yes, sir.

Q. Will you tell us what that stone was worth; describe the stone and tell its worth?

A. It was an unset diamond, and white, and weighed,

to the best of my knowledge, say around about two and a quarter.

Q. Two and a quarter what?

A. Carat; I cannot say exactly for sure, but I generally write "about," not being certain. The stone, as I valued it, was a little off color.

Q. What was its value, its market value?

A. I should say it was worth about three hundred and fifty dollars.

Q. Did Mr. Costello afterwards bring this ring which is there on the witness stand before you, to you?

A. He did, yes.

(Objected to. Objection overruled. Exception for defendant.) (2)

When Archibald Bryson, a witness for the defendant, was on the stand, the defendant's description book was produced, and the witness was asked this question:

Q. It looks as if there was some erasure here, as if there had been some erasure in the name "Costello"; was there any erasure there?

(Objected to. Objection sustained. The entry in the book is as follows: being the last of eleven entries under date of September 17th: "Costello F. Ring White S $5.50.")

Q. And if so, have you any reason, can you explain

(Objected to. Objection sustained.)

Q. Was there any erasure made—just look at this book—do you know of any upon this page of any kind?

(Objected to. Objection sustained.) (3)

The Court: It makes no difference what the witness would say, I will determine that for myself.

Q. Weren't you arrested when you worked in Robinson's pawnshop?

(Objected to. Objection overruled. Exception allowed.)

A. No, sir. (4)

When the defendant was on the stand he was asked this question:

Q. You know his (Bryson's) general reputation for truthfulness?

(Objected to.    Objection sustained.    Exception allowed.)    (17)

Verdict and judgment for plaintiff for $350.00.    Defendant appealed.

*Errors assigned* were various rulings as above and in refusing binding instructions for defendant.

*Henry C. Boyer,* with him *Dimner Beeber,* for appellant.

*William T. Connor,* with him *John R. K. Scott,* for appellee.

OPINION BY KEPHART, J., December 20, 1915:

As we stated in Herring Brothers v. Weinroth, 61 Pa. 529, in an opinion recently handed down, "the disposition of questions of fact arising from testimony would have the same effect and should be treated in the same manner as though the evidence had been submitted to a jury at common law.   This court will not disturb the conclusions of the judge when based on proper evidence or inferences fairly deducible from such evidence."   While this is correct, where there is a motion for judgment non obstante veredicto denied by the lower court, we will examine the testimony to determine whether there is any evidence which will sustain the finding: Duke, to use, v. North Penn Gas Company, 220 Pa. 348.   For this purpose we have examined the testimony and find that there is in it sufficient, if believed by the trial judge, to warrant his conclusion.   It is quite clear that one of the parties to this action is perpetrating a gross fraud.   The plaintiff says she took a diamond to the defendant to be set into a ring and the defendant gave her a ring with a

white sapphire setting. The defendant denied this story and says the plaintiff gave her a sapphire and he returned a sapphire. This conflict of testimony would prevent a binding direction for judgment. Our consideration of the case is therefore limited to the errors of law, if any, committed during the trial. Platt's testimony, concerning the visit to him of the plaintiff's husband with this diamond the day before it was taken to the defendant, and his testimony as to its value were competent as corroborating the plaintiff in that she owned a diamond and as evidence of its value. It was shown that this same stone was afterwards left with the defendant. The first and second assignments of error are overruled.

Bryson, the clerk who received this stone, testified that he made no erasure in the description book and knew of none having been made. He certainly was in no position to explain an erasure if one was made. The third assignment is dismissed.

All of the questions asked witness Bryson, as to a crime committed by him while he was employed in another jewelery store sometime before, were for the purpose of attacking his credibility. These were answered favorably by him and we do not see how the questions prejudiced the defendant's case. When he denied that he had been arrested, or that a warrant had been issued for his arrest, his reputation stood unimpeached on the record. It was not competent for the defendant to offer evidence of his general reputation for truthfulness. Even if it may be said that the witness was incidentally charged with the commission of an offense through the questions asked, that suggestion cannot be rebutted by proof of general character. Had his credibility been assailed directly by the plaintiff by evidence as to his reputation for truthfulness, the testimony offered would have been admissible. "Evidence in support of the general character of witnesses, is not competent until their general character has been assailed. Every witness puts

his character in issue; but until evidence tending directly to impeach it is produced, the law presumes it to be good, and therefore testimony to prove it good is superfluous": Wertz v. May, 21 Pa. 274.

Assignments nine to twelve are without merit. Dankworth stated that he did not keep the description book, and on the morning following the day when the diamond was taken to the store he did not see the book or personally receive the article from the defendant.

Even if this woman understood the English language the statement of Thompson was properly rejected. It does not appear that her attention was attracted to what was being said, as she was just going out the door when the remark was made; but the remark was already in evidence. Cohen, who made it, and Bryson, who heard it, had testified to it and this evidence would be merely cumulative. After careful consideration of the entire record we do not feel disposed to substitute our judgment for that of the judge who heard the evidence.

All of the assignments of error are overruled, and the judgment is affirmed.