485 A.2d 374

**Maurice S. HEPPS, et al.**

v.

**PHILADELPHIA NEWSPAPERS, INC., William Ecenbarger, and William Lambert.**

**Appeal of Maurice S. HEPPS, et al.**

Supreme Court of Pennsylvania.

Argued April 9, 1984.

Decided Dec. 14, 1984.

William H. Lamb, Edwin P. Rome, Ronald H. Surkin, Philadelphia, for appellants.

David H. Marion, Richard L. Cantor, West Chester, for appellees.

Before NIX, C.J., and FLAHERTY, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

NIX, Chief Justice.

The instant civil libel action resulted from a series of five "investigative" articles appearing in *The Philadelphia Inquirer* which purported to link Maurice S. Hepps, General Programming, Inc. and a number of independent corporate entities who operated beer and beverage distributorships as franchises of General Programming, Inc. to certain named "underworld" figures and to organized crime generally.

Maurice Hepps, the individual plaintiff-appellant was the principle stockholder of the corporate plaintiff-appellant, General Programming, Inc. ("General"). General owns the trademarks "Thrifty Beverage" and "Brewer's Outlet," and licenses such marks and provides management and consultation services to licensees. The remaining corporate and individual plaintiff-appellants, approximately nineteen in number, are licensees of General. As a result of these articles, the plaintiff-appellants instituted a civil action in libel against Philadelphia Newspapers, Inc., the publisher of the newspaper in question, and William Ecenbarger and William Lambert, the reporters who prepared the series of articles.

After a six-week trial, the jury returned a general verdict in favor of defendant-appellees. Plaintiff-appellants based their challenge to the judgment rendered below upon the trial court's decision to instruct the jury that the plaintiff bears the burden of proving the falsity of the defamatory publication. This instruction was given after the trial court had ruled that 42 Pa.C.S. § 8343(b)(1) was unconstitutional in that it requires the defendant in a civil libel suit to establish the truth of the defamatory publication by way of an absolute defense to the action. Plaintiff-appellants also appeal the trial court's dismissal of their claim for punitive damages. This direct appeal seeking the award of a new trial is entertained by this Court pursuant to 42 Pa.C.S. § 722(7).

## I.

It has long been the decisional law of this Commonwealth that truth is a complete defense to a civil action for libel, and that the burden of proving truth rests upon the defendant. *Matson v. Margiotti*, 371 Pa. 188, 88 A.2d 892 (1952); *Kilian v. Doubleday & Co., Inc.*, 367 Pa. 117, 79 A.2d 657 (1951); *Montgomery v. Dennison*, 363 Pa. 255, 69 A.2d 520 (1949); *Mulderig v. Wilkes Barre Times*, 215 Pa. 470, 64 A. 636 (1906); *Burkhart v. North American Co.*, 214 Pa. 39, 63 A. 410 (1906); *Bryant v. Pittsburgh Times*, 192 Pa. 585,

44 A. 251 (1899); *Wood v. Boyle*, 177 Pa. 620, 35 A. 853 (1896); *Collins v. Dispatch Pub. Co.*, 152 Pa. 187, 25 A. 546 (1893); *Conroy v. Pittsburgh Times*, 139 Pa. 334, 21 A. 154 (1891); *McLenahan v. Andrews*, 135 Pa. 383, 19 A. 1039 (1890); *Press Co. v. Stewart*, 119 Pa. 584, 14 A. 51 (1888); *Rowand v. DeCamp*, 96 Pa. 493 (1880); *Barr v. Moore*, 87 Pa. 385 (1878); *Burford v. Wible*, 32 Pa. 95 (1858); *Chapman v. Calder*, 14 Pa. 365 (1850); *Steinman v. McWilliams*, 6 Pa. 170 (1847). In 1953, this common law principle was codified in the Act of August 21, 1953, P.L. 1291, No. 363, § 1(2)(a), 12 P.S. § 1584a(b)(1) (Repealed 1978), which provided:

> In an action for defamation, the defendant has the burden of proving, when the issue is properly raised;
> The truth of the defamatory communication.

The provision was reenacted in the Judicial Code on July 9, 1976, effective June 27, 1978, 42 Pa.C.S. § 8343(b)(1):

> Burden of defendant.—In an action for defamation, the defendant has the burden of proving, when the issue is properly raised:
> The truth of the defamatory communication.

. . . . .

Thus the section now being challenged is the codification of the decisional law as it has developed over the last century in this Commonwealth on this subject. We are now called upon to determine whether section 8343(b)(1), which places upon the defendant in a libel suit the burden of proving the truth of defamatory statements, is constitutionally infirm in view of the relatively recent interpretations of the First Amendment of the United States Constitution as expressed by the United States Supreme Court in *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), and its progeny. *See, e.g., Bose Corp. v. Consumers Union of U.S., Inc.*, —— U.S. ——, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984); *Wolston v. Reader's Digest Ass'n., Inc.*, 443 U.S. 157, 99 S.Ct. 2701, 61 L.Ed.2d 450 (1979); *Hutchinson v. Proxmire*, 443 U.S. 111, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979); *Herbert v. Lando*, 441 U.S.

153, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979); *Time, Inc. v. Firestone*, 424 U.S. 448, 96 S.Ct. 958, 47 L.Ed.2d 154 (1976); *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974); *Rosenbloom v. Metromedia, Inc.*, 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971); *Time, Inc. v. Pape*, 401 U.S. 279, 91 S.Ct. 633, 28 L.Ed. 45 (1971); *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 91 S.Ct. 621, 28 L.Ed.2d 35 (1971); *Greenbelt Cooperative Publishing Ass'n. v. Bresler*, 398 U.S. 6, 90 S.Ct. 1537, 26 L.Ed.2d 6 (1970); *St. Amant v. Thompson*, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968); *Time, Inc. v. Hill*, 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967); *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967).

### A.

█ Before examining the United States Supreme Court decisions relating to the impact of the First Amendment upon this area of the law, it is instructive to briefly review the Pennsylvania law of libel as it has developed over the years. The underlying premise concerning the character of the defamed individual is the principle that any man accused of wrong-doing is presumed innocent until proven guilty. The decisions reasoned this principle trancended the criminal law and was equally applicable to the ordinary affairs of life. *Corabi v. Curtis Publishing Co.*, 441 Pa. 432, 448–49, 273 A.2d 899, 907 (1971); *Montgomery v. Dennison, supra*, 363 Pa. at 263 n. 2, 69 A.2d at 525 n. 2. Based upon this premise we developed the rule that in actions for defamation, the general character or reputation of the plaintiff is presumed to be good. *Corabi, supra*, 441 Pa. at 449, 273 A.2d at 908; *Klumph v. Dunn*, 66 Pa. 141, 147 (1870); *Hartranft v. Hesser*, 34 Pa. 117, 119 (1859); *Chubb v. Gsell*, 34 Pa. 114, 116 (1859). Since the gravamen of defamation is that the words uttered or written tend to harm the reputation, a consequence of the rule presuming the good reputation of the plaintiff was a presumption of the falsity of the

defamatory words. *Corabi, supra; Hartranft v. Hesser, supra.*

■ Evidentiary considerations have also been offered to justify the presumption. As noted by this Court in *Corabi:*

Moreover, it is manifestly the fair thing to place upon the defendant the burden of proving truth: *Montgomery v. Dennison,* supra [363 Pa.] n. 2 at 263 [69 A.2d 520]; 9 Wigmore, Evidence § 2486, at 276 (3d ed. 1940). Although not invariably so, it is preferable to place the burden of proof upon the party having in form the affirmative allegation and/or upon the party who presumably has peculiar means of knowledge of the particular fact in issue: See Wigmore, Evidence § 2486, supra. For example, in the context of libel, if the written communication accuses plaintiff of being a murderess, a burglar or a prostitute, the defendant knows precisely what particular event he is referring to and the source of his information, whereas the plaintiff, not knowing these facts, would experience great difficulty in refuting these general charges by showing their falsity.

*Id.* 441 Pa. at 450–451, 273 A.2d at 908–09 (footnotes omitted).

Particularly, where the accusation is totally general and without the specificity necessary for a response, the absence of such a presumption would force the plaintiff in the unenviable position of proving the negative. *Corabi, supra,* 441 Pa. at 450, 273 A.2d at 907; *Conroy v. Pittsburgh Times, supra,* 139 Pa. at 339, 21 A. at 156.[1]

---

1. Another rationale offered to support the presumption of the good character or innocence of the plaintiff was the view that it would be unduly prejudicial to the defendant to permit the plaintiff to prove his general good character in the plaintiff's case-in-chief. In *Hartranft v. Hesser,* 34 Pa. 117, 119 (1859), it was stated that the plaintiff is not permitted to prove his general good character because to permit such evidence would be to take advantage of the defendant who was unapprised of its nature or to raise a collateral issue not made by the pleadings in the case. *Id.* Thus, character evidence in defamation cases follows the general rule that "In civil proceedings, evidence of character is inadmissible unless directly in issue or involved in the nature of the proceedings, and *even then evidence of good character is*

Although falsity of the defamatory words is presumed, proof of the truth of the words by the defendant is a complete and absolute defense to a civil action for libel. *Pierce v. Cities Communications, Inc.*, 576 F.2d 495, 507 (3d Cir.) *cert. denied*, 439 U.S. 861, 99 S.Ct. 181, 58 L.Ed.2d 170 (1978); *Lowenschuss v. West Publishing Co.*, 542 F.2d 180, 184 (3d Cir.1976); *Keddie v. Pennsylvania State University*, 412 F.Supp. 1264 (M.D.Pa.1976); *Fram v. Yellow Cab Co. of Pittsburgh*, 380 F.Supp. 1314 (W.D.Pa.1974); *Corabi, supra*, 441 Pa. at 449, 273 A.2d at 907; *Schonek v. WJAC, Inc.*, 436 Pa. 78, 84, 258 A.2d 504, 507 (1969); *Schnabel v. Meredith*, 378 Pa. 609, 612, 107 A.2d 860, 862 (1954); *Montgomery v. Dennison, supra*, 363 Pa. at 264, 69 A.2d at 525; *Hartranft v. Hesser, supra* at 119; *Dunlap v. Philadelphia Newspapers, Inc.*, 301 Pa.Super. 475, 485–86, 448 A.2d 6, 11 (1982); *Badami v. Dimson*, 226 Pa.Super. 75, 77, 310 A.2d 298, 300 (1973); Restatement (Second) of Torts § 581A, comment b, at 235–36 (1976). Under our law, since truth is an absolute defense, whether the defamatory statements were made willfully or negligently, Restatement (First) of Torts § 582 comment (a) (1938), a civil action in libel is only actionable, at least in theory, where the defamatory statement is also false.[2] *Rosenbloom, supra*, 403

not admissible unless and until it is attacked by evidence to the contrary, it being presumed to be good in absence of proof that it is bad." 1 G. Henry, Pennsylvania Evidence § 152 (1953) (emphasis added) *citing Costello v. Long*, 62 Pa.Super. 13, 17 (1915); *Burkhart v. North American Co.*, 214 Pa. 39, 42, 63 A. 410, 411 (1906); *Clark v. North American Co.*, 203 Pa. 346, 353, 53 A. 237, 239 (1902); *Chubb v. Gsell*, 34 Pa. 114, 116 (1859). *See also* 22 P.L.E. *Libel and Slander* § 57 (1959).

2. In *Corabi* it is stated that falsity is not an element of the civil action of libel under our law. *Id.*, 441 Pa. at 449, 273 A.2d at 908. This statement is troubling. The fact that an element is presumed and can only be overcome by affirmative evidence establishing the contrary, does not remove it as an element of the cause of action. If such was the case, there would be no need for the presumption in the first instance. *See Waugh v. Commonwealth*, 394 Pa. 166, 146 A.2d 297 (1958); *Waters v. New Amsterdam Casualty Co.*, 393 Pa. 247, 144 A.2d 354 (1958); *MacDonald v. Pennsylvania R. Co.*, 348 Pa. 558, 36 A.2d 492 (1944); *Smith v. Kingsley*, 331 Pa. 10, 200 A. 11 (1938); *Watkins v. Prudential Ins. Co. of America*, 315 Pa. 497, 173 A. 644 (1934). A more accurate statement of our law is that, although falsity is an element of

U.S. at 37, 91 S.Ct. at 1816; *Harbridge v. Greyhound Lines, Inc.*, 294 F.Supp. 1059, 1063 (E.D.Pa.1969); *Corabi, supra,* 441 Pa. at 448–49, 273 A.2d at 908; *Young v. Geiske,* 209 Pa. 515, 519, 58 A. 887, 888 (1904); *Wood v. Boyle, supra,* 177 Pa. at 631, 35 A. at 854; *Collins v. Dispatch Pub. Co., supra,* 152 Pa. at 189–90, 25 A. at 547; *Barr v. Moore, supra* at 391; Restatement (First) of Torts § 558 (1938). The cause of action arises not only because the words injure the reputation of another, but also because the publication is false. The defamatory nature of the comment, regardless of how injurious to the reputation, is not alone actionable. *Rosenbloom, supra,* 403 U.S. at 37, 91 S.Ct. at 1816; *Harbridge v. Greyhound Lines, Inc., supra* at 1063; *Corabi, supra,* 441 Pa. at 448–49, 273 A.2d at 908; *Young v. Geishe, supra,* 209 Pa. at 519, 58 A. at 888; *Wood v. Boyle, supra,* 177 Pa. at 631, 35 A. at 853; *Collins v. Dispatch Pub. Co., supra,* 152 Pa. at 189–90, 25 A. at 547; *Barr v. Moore, supra* at 391.

██ Even though false, published materials may not give rise to liability where it is privileged. The publisher of the defamatory falsehood under the traditional Pennsylvania law of defamation is not a guarantor of the truth of the materials published. However, privilege is abused if the defamatory statement is negligently published. In *Montgomery v. Philadelphia,* 392 Pa. 178, 140 A.2d 100 (1958), it was stated that the defense of privilege in cases of defamation "rests upon the ... idea, that conduct which otherwise would be actionable is to escape liability because the defendant is acting in furtherance of some interest of social importance, which is entitled to protection even at the expense of uncompensated harm to the plaintiff's reputation." 392 Pa. at 181, 140 A.2d at 102, *quoting* W. Prosser, *Torts* § 607 (2d ed. 1955). Thus, truth was never the *only* defense to a civil libel action in Pennsylvania. This concept was clearly set out in *Diamond v. Krasnow,* 136 Pa.Super.

the cause of action, we have concluded that the burden should be placed upon the alleged defamer to establish the truth of these accusations and will presume their falsity in the absence of proof to the contrary.

68, 7 A.2d 65 (1939), which stated that the immunity of a privileged communication "is an exception to the general rule that nothing short of the truth is a defense...." *Id.*, 136 Pa.Superior Ct. at 76, 7 A.2d at 69, *citing Stevenson v. Morris*, 288 Pa. 405, 136 A. 234 (1927); *Hartman v. Hyman*, 287 Pa. 78, 134 A. 486 (1926); *Montgomery v. New Era Printing Co.*, 229 Pa. 165, 78 A. 85 (1910); *Mulderig v. Wilkes-Barre Times, supra; McGaw v. Hamilton*, 184 Pa. 108, 39 A. 4 (1898); *Conroy v. Pittsburgh Times, supra; Russell v. Pa. Mut. Life Ins. Co.*, 118 Pa.Super. 351, 179 A. 798 (1935); *McGerary v. Leader Publish. Co.*, 52 Pa.Super. 35 (1912); *Collins v. News Co.*, 6 Pa.Super. 330 (1898).

Nonetheless, tradition, evidentiary considerations, or any other state determined policy, cannot support the presumption of falsity, if it is offensive to constitutional mandate. Judge Sugerman reviewed the pertinent United States Supreme Court decisions and concluded that we are compelled to reject the rule that the defendant bears the burden of proving truth. We are unquestionably bound by the United States Supreme Court's interpretation of the provisions of the Federal Constitution. *First Pennsylvania Bank v. Lancaster County Tax Claim Bd.*, 504 Pa. 179, 185, 470 A.2d 938, 941 (1983); *Commonwealth v. Ware*, 446 Pa. 52, 56, 284 A.2d 700, 702 (1971), *cert. denied*, 406 U.S. 910, 92 S.Ct. 1606, 31 L.Ed.2d 821 (1972); *Commonwealth ex rel. Banks v. Hendrick*, 430 Pa. 575, 578, 243 A.2d 438, 439 (1968); *Commonwealth v. Robin*, 421 Pa. 70, 72, 218 A.2d 546, 546 (1966); *Carolene Products Co. v. Harter*, 329 Pa. 49, 55, 197 A. 627, 630 (1938). We will therefore review those decisions and assess Judge Sugerman's conclusions as to their impact under the facts of this case.

### B.

At the outset of the discussion of the United States Supreme Court decisions, it must be remembered that the Court was attempting to define the extent of the freedom of expression provided under the First Amendment, and made applicable to the state through the Fourteenth Amendment, as it relates to civil actions for libel under state law. A

subsidiary objective was the formulation of a rule that would satisfy the protection found to be constitutionally required. In the words of that Court, they were struggling "to define the proper accommodation between the law of defamation and the freedoms of speech and press protected by the First Amendment." *Gertz, supra,* 418 U.S. at 325, 94 S.Ct. at 3000. Our purpose for reviewing these decisions at this time is to determine whether our rule of state libel law presuming the good reputation of the plaintiffs and setting up truth as a defense to be established by the defendant runs counter to the present interpretations of the First Amendment mandates.

In *New York Times, supra,* the Supreme Court stated that state law of civil libel "can claim no talismanic immunity from constitutional limitations". *Id.* 376 U.S. at 269, 84 S.Ct. at 720. That Court then proceeded to conclude that the central meaning of the First Amendment, enforced upon the states through the Fourteenth Amendment, required a privilege of fair comment and honest mistake of fact. The majority held that a public official is prohibited "from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not".[3] *Id.* at 279–80, 84 S.Ct. at 725–26.

In the context of criticism of public officials the Court rejected the argument that the availability of the defense of truth, where the burden of establishing it is on the defendant, satisfies the constitutional concerns involved.

> Under such a rule, would-be critics of official conduct may be deterred from voicing their criticism, even though it is believed to be true and even though it is in fact true, because of doubt whether it can be proved in court or fear of the expense of having to do so. They tend to

---

**3.** The *New York Times* decision was without dissent. The three concurring justices would have required an absolute, unconditional privilege to critique official conduct. *New York Times v. Sullivan,* 376 U.S. 254, 297, 84 S.Ct. 710, 735, 11 L.Ed.2d 686 (1964) (Black, J., concurring, joined by Douglas, J.); *Id.* at 304–05, 84 S.Ct. at 738–39 (Goldberg, J., concurring, joined by Douglas, J.).

make only statements which "steer far wider of the unlawful zone". (citations omitted) The rule thus dampens the vigor and limits the variety of public debate. It is inconsistent with the First and Fourteenth Amendments. *Id.* at 279, 84 S.Ct. at 725 (citations omitted).

Although *New York Times* made it clear that no longer would the former view that libel was speech not protected by the First Amendment be without exception, many questions were still left unanswered by that decision as to the full extent of the constitutional privilege developed therein. The *New York Times* decision did not expressly state that the constitutional protection required the shifting of the burden of proving falsity to the plaintiff in establishing a *prima facie* case. Nor did the reasoning of that decision necessarily implicitly compel such a result. *See Corabi, supra,* 441 Pa. at 468 n. 22, 273 A.2d at 917 n. 22. In *New York Times,* the Court had no occasion to consider the question of who should bear the burden of proving falsity when it is in fact in issue in the litigation. To the contrary, the Court in *New York Times* was concerned with stressing "[t]hat erroneous statement is inevitable in free debate, and that it must be protected if the freedoms of expression are to have the 'breathing space' that they need to survive". *Id.* 376 U.S. at 271–72, 84 S.Ct. at 721–22.[4]

The major question commanding the attention of the Court in subsequent decisions was the extent to which

---

4. We note that several of the decisions of that Court have stated the *New York Times* holding as requiring proof of falsity as part of the plaintiff's *prima facie* case. For instance in *Garrison v. Louisiana,* 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964), Justice Brennan stated:

We held in New York Times that a public official might be allowed the civil remedy *only if* he establishes that the utterance was false....

*Id.* at 74, 85 S.Ct. at 215. (emphasis added)

*See also Greenbelt Corp. Publishing Assn. v. Bresler,* 398 U.S. 6, 8, 90 S.Ct. 1537, 1538, 26 L.Ed.2d 6 (1970); *Rosenblatt v. Baer,* 383 U.S. 75, 84, 86 S.Ct. 669, 675, 15 L.Ed.2d 597 (1966).

However, in *Cox Broadcasting Corp. v. Cohn,* 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975), Justice White speaking for the Court again stated that "the prevailing view is that truth is a defense". *Id.* at 489, 95 S.Ct. at 1043. Thus as to whether the communications intended to be covered by the *Times* rule, required proof of falsity as

the *New York Times* rule should apply. In 1967, the Court extended the *New York Times* rule to public figures in *Curtis Publishing Co. v. Butts* and *Associated Press v. Walker*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967). In those cases the plaintiffs were not public officials as was the case in *New York Times*, but rather individuals who had attracted public attention either through the positions they held in society or their activities in affairs of public concern.[5] However, in *Rosenbloom, supra*, the Court was divided on whether the standard of knowing or reckless falsity applied where the alleged defamatory statements related to a private individual in a matter of public or general concern.[6]

Instant appellee concedes that up to this point the constitutional protection identified in *New York Times* had not

part of the plaintiff's *prima facie* case under the *New York Times* decision is at best unclear and debatable. Moreover, the subsequent restatement of the *Times* holding in the cited cases can arguably be classified as loose characterizations and thus not determinative of the question as to where the burden of proving falsity should lie. *See* Eaton, The American Law of Defamation Through Gertz v. Robert Welch, Inc. and Beyond, 61 Va.L.Rev. 1349, 1383–84 (1975).

5. At this stage of the development of the term a "public figure" is one who through fame, notoriety of achievements, or through voluntary participation in resolution of important public questions, seeks to influence society. *Time, Inc. v. Firestone*, 424 U.S. 448, 453, 96 S.Ct. 958, 964, 47 L.Ed.2d 154 (1976); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 337, 342, 94 S.Ct. 2997, 3005, 3008, 41 L.Ed.2d 789 (1974); *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 154, 164, 87 S.Ct. 1975, 1991, 1996, 18 L.Ed.2d 1094 (1967); *Steaks Unlimited, Inc. v. Deaner*, 623 F.2d 264, 273 (3d Cir.1980). The characteristics of this category deemed to justify the application of the actual malice standard are that the public figure invites public attention, criticism and comment and usually has access to the media to refute any defamatory publicity. *Time, Inc., supra*, 424 U.S. at 456, 96 S.Ct. at 966; *Gertz, supra*, 418 U.S. at 344, 94 S.Ct. at 3009; *Steaks Unlimited, supra* at 274.

6. To be distinguished from those included within the "public figure" category is the involuntary public figure. This is an individual who has not attained fame or notoriety and who is thrust into an event of general public interests involuntarily. *Times, Inc. v. Firestone*, 424 U.S. 448, 96 S.Ct. 958, 47 L.Ed.2d 154 (1976). Justice Brennan in *Rosenbloom v. Metromedia, Inc.*, 403 U.S. 29, 91 S.Ct. 1811, 29 S.Ct. 296 (1971) argued that the "malice standard" should not focus on the nature of the individual involved but rather upon whether the event is one of general public interests. *See also Gertz, supra*, 418 U.S. at 361,

been extended to the private citizen seeking redress for an alleged libel under state law. Thus the state could, without reference to the Constitution, assign the burden to prove truth upon the defendant in a private figure libel case. Brief of Appellees at 13. We agree with this concession and add, as previously noted, even if the constitutional protection had been found applicable, it was still unclear up to that point whether placing the burden of proving truth upon the defendant would have been offensive to such a Constitutional mandate. Nevertheless, appellee relies, as did Judge Sugerman, upon the Court decision in *Gertz* as the basis for the view that the First Amendment is here applicable and that placing the burden upon the defendant to prove truth runs afoul of the protection afforded free expression.

## C.

In approaching the issue in *Gertz* that the Court was unable to resolve in *Rosenbloom,* they began by recognizing that the difference between the public official and public figure on the one side and the private individual on the other warranted a different approach in the two situations. The Court expressed the belief that "private individuals are not only more vulnerable to injury than public officials and public figures; they are also more deserving of recovery." [7] *Gertz, supra,* 418 U.S. at 345, 94 S.Ct. at 3009. After acknowledging the persisting antithesis that must

94 S.Ct. at 3017 (Brennan, J., dissenting). The *Firestone* Court specifically rejected the Brennan view stating that such an extension would unjustifiably abridge a legitimate state interest in protecting private individuals from libelous publications. *Id.,* 424 U.S. at 454, 96 S.Ct. at 965. Our decision in *Matus v. Triangle Publications, Inc.,* 445 Pa. 384, 286 A.2d 357 (1971), *cert. denied,* 408 U.S. 930, 92 S.Ct. 2494, 33 L.Ed.2d 343 (1972), which adopted the position of the *Rosenbloom* plurality, must therefore be overruled.

7. The United States Supreme Court has interpreted the First Amendment as affording private individuals a greater protection from defamation than both public officials and public figures because public figures and officials enjoy a greater opportunity to reply to libelous statements and they have also purposefully assumed a position in

necessarily exist between freedom of speech and press and libel actions,[8] the Court nevertheless concluded that "the states should retain substantial latitude in their efforts to enforce a legal remedy for defamatory falsehood injurious to the reputation of a private individual." [9] Acknowledging the legitimacy of the concern of the *New York Times* Court to assure the freedoms of speech and press that "breathing space" essential to their fruitful exercise, *see NAACP v. Button*, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963), the *Gertz* Court held that "the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to the private individual" provided the state did not create a scheme that imposed liability without fault. *Gertz, supra,* 418 U.S. at 347, 94 S.Ct. at 3010.[10]

In reaching this conclusion, the *Gertz* Court stated that it believed its rule would insulate the private citizen from the stringent standard of actual malice, and yet shield the media from the rigors of strict liability.[11] The Court stated that it had chosen this approach "in recognition of the

society which invites attention and comment. By voluntarily assuming such a role in society, public figures and officials relinquish, to a degree, their right to privacy. *Gertz, supra,* 418 U.S. at 345, 94 S.Ct. at 3009.

**8.** The Court noted that since libel is based upon the content of the speech, it limits the freedom of the publisher to express certain sentiments unless the publisher is willing to take the risk of the defense of a civil action in libel. *Gertz, supra* at 342, 94 S.Ct. at 3008.

**9.** In this context, the Court noted that the extension of the *New York Times* test proposed by the *Rosenbloom* plurality would "abridge this state interest [protecting private citizens from injury resulting from defamatory falsehood] to a degree that we find unacceptable". *Gertz, supra* at 346, 94 S.Ct. at 3010.

**10.** The *Gertz* Court characterized a rule of strict liability as one which compels a publisher or broadcaster to guarantee the accuracy of his factual assertions. *Gertz, supra* at 340, 94 S.Ct. at 3007. The Court stated that "[a]llowing the media to avoid liability *only* by proving the truth of all injurious statements does not accord adequate protection to First Amendment liberties." *Id.* (emphasis added).

**11.** As a caveat to this aspect of the *Gertz* standard, the Court cautioned: ... *At least this conclusion obtains where, as here, the substance of the defamatory statement "makes substantial danger to reputation apparent."* This phrase places in perspective the conclusion we

strong and legitimate state interest in compensating private individuals for injury to reputation." *Id.* at 348, 94 S.Ct. at 3011.

However, the Court found that this compelling state interest did not extend beyond compensation for actual injury.

[W.]e hold that the states may not permit recovery of presumed or punitive damages, at least when liability is not based on a showing of knowledge of falsity or reckless disregard for the truth.

*Id.* at 349, 94 S.Ct. at 3011.

The Court was of the view that the "largely uncontrolled discretion" conferred on juries in presumed damages and the invitation in these instances to juries "to punish unpopular opinion" did offend constitutionally protected free expression. Concluding that presumed damages constituted "gratuitous awards of money damages far in excess of any actual injury," *id.* at 349, 94 S.Ct. at 3011, the Court reasoned that the state interest in these instances was insufficient to permit recovery unless, at a minimum, at least, the *New York Times* standard is met. Following the same general reasoning as employed in the case of presumed damages, the Court reached the same result for punitive damages.

## II.

### A.

■■■ It is apparent from *Gertz* and the cases following it, *Herbert v. Lando, supra; Time, Inc. v. Firestone, supra;*

announce today. Our inquiry would involve considerations somewhat different from those discussed above if a State purported to condition civil liability on a factual misstatement whose content did not warn a reasonably prudent editor or broadcaster of its defamatory potential. Cf. *Time, Inc. v. Hill,* 385 US 374 [87 S.Ct. 534, 17 L.Ed.2d 456] (1967). Such a case is not now before us, and we intimate no view as to its proper resolution.

*Id.* at 348, 94 S.Ct. at 3011 (emphasis added; footnote omitted). Since, however, the defamatory character of the articles in question in this appeal was apparent, the above caveat of *Gertz* is not here applicable.

that the only restraint upon the states mandated by the First Amendment in civil actions for defamatory falsehood brought by a private figure for compensatory damages is that they may not impose liability upon the defendant without fault. As early as 1939 this Court stated, in *Summit Hotel Co. v. National Broadcasting Co.*, 336 Pa. 182, 8 A.2d 302 (1939), that liability for defamatory falsehood cannot be imposed without fault. The defendant in that case was a broadcasting company that rented its time and facilities to an advertising corporation for the transmission of a series of sponsored radio programs over one of its networks. A script for each program was prepared in advance and submitted to the broadcaster and followed exactly by the performers at rehearsals where it was approved. All participants in the program in question were employed and paid by the advertising company which had rented the time slot. When the program was over one-half completed, one of the participants interpolated an extemporaneous remark.

The trial court found that the interjected "ad lib" was "slanderous per se" and ruled that the defendant's liability was absolute though it was without any fault. In rejecting the trial court's acceptance of a theory of strict liability, Chief Justice Kephart noted:

> In Pennsylvania, the principle of liability without fault for injuries to the person has received scant consideration. The great body of our law of liability for personal injuries is that of liability through fault; liability based almost exclusively on wrongful conduct.

*Id.*, 336 Pa. at 187, 8 A.2d at 304.

In discussing other areas where some states had imposed strict liability, reference was made to those jurisdictions that were then extending a theory of strict liability to publishers of newspapers for defamatory publications, the Court stated:

> Considering the rule of supposedly absolute liability imposed in some jurisdictions on the publisher of a newspaper for his defamatory publications, and this is the rule

here chiefly relied on, a close examination of the Pennsylvania law will show that our rule is not one of absolute liability, but rather, of a very strict standard of care to ascertain the truth of the published matter. (Citations and footnote omitted)

*Id.*, 336 Pa. at 192, 8 A.2d at 307.

Thus, it would appear that long before the First Amendment considerations were raised, the common law of this jurisdiction had determined that the law of libel should require negligence or willful misconduct. *See Rosenbloom v. Metromedia, Inc., supra,* 403 U.S. at 87 n. 13, 91 S.Ct. at 1841 n. 13; *Zerpol Corp. v. DMP Corp.,* 561 F.Supp. 404, 410 n. 3 (E.D.Pa.1983); *Purcell v. Westinghouse Broadcasting Co.,* 411 Pa. 167, 178–81, 191 A.2d 662, 668–69 (1963); *Williams v. Kroger Grocery & Baking Co.,* 337 Pa. 17, 19, 10 A.2d 8, 9 (1940); *Wharen v. Dershuck,* 264 Pa. 562, 566, 108 A. 18, 19–20 (1919); *Clark v. North American Co.;* 203 Pa. 346, 352, 53 A. 237, 239 (1902); *Neeb v. Hope,* 111 Pa. 145, 151–52, 2 A. 568, 570–71 (1885).[12]

 We are mindful that the former conditional privileges recognized under our law have lost their significance in the wake of *New York Times* and *Gertz.* If a private figure plaintiff is to maintain any cause of action at all, he must minimally establish the negligence on the part of the publisher. In so doing, "he has by that very action proved any possible conditional privilege was abused." Restatement (Second) of Torts, Topic 3, Title A, Special Note, at 259 (1977); *see also Nevada Independent Broadcasting Corp. v. Allen,* —— Nev. ——, 664 P.2d 337, 342–343 (1983).

12. Moreover, the requirement of fault has been codified in Pennsylvania law since 1901. 42 Pa.C.S. § 8344 (originally enacted in Act of April 11, 1901, P.L. 74, § 3, 12 P.S. § 1583) provides:

**Malice or negligence necessary to support award of damages**
In all civil actions for libel, no damages shall be recovered unless it is established to the satisfaction of the jury, under the direction of the court as in other cases, that the publication has been maliciously or negligently made, but where malice or negligence appears such damages may be awarded as the jury shall deem proper.

## B.

██ The core of the reasoning of both the trial court and instant appellees is that the *Gertz* prohibition against strict liability necessarily requires that the plaintiff must have the burden of proving the falsity of the matter. This proposition does not logically flow, nor is it consistant with the concern sought to be addressed by the *Gertz* rule. The concept of fault as developed in the *Gertz* decision is not synonymous with the burden of proof of truth or falsity. The *Gertz* Court wished to avoid the possibility that a publisher may be held liable for defamation even though he took every conceivable precaution to ensure the accuracy of the offending statement prior to its dissemination. *Id.* 418 U.S. at 346, 94 S.Ct. at 3010. Under the law of this Commonwealth there is no liability for civil libel unless plaintiff can at least establish that the dissemination occurred as a result of lack of due care. 42 Pa.C.S. § 8344; *Rosenbloom, supra,* 403 U.S. at 87 n. 13, 91 S.Ct. at 1841 n. 13; *Zerpol Corp. v. DMP Corp., supra* at 410 n. 3; *Purcell v. Westinghouse Broadcasting Co., supra,* 411 Pa. at 178–81, 191 A.2d at 668–69; *Williams v. Kroger Grocery & Baking Co., supra,* 337 Pa. at 19, 10 A.2d at 9; *Wharen v. Dershuck, supra,* 264 Pa. at 566, 108 A. at 19–20; *Clark v. North American Co., supra,* 203 Pa. at 352, 53 A. at 239. A plaintiff, even though benefitting from the presumption of falsity, must nevertheless show that defendant acted maliciously or negligently. 42 Pa.C.S. § 8344; *Rosenbloom, supra,* 403 U.S. at 87 n. 13, 91 S.Ct. at 1841 n. 13; *Zerpol Corp. v. DMP Corp., supra* at 410 n. 3; *Purcell v. Westinghouse Broadcasting Co., supra,* 411 Pa. at 178–81, 191 A.2d at 668–69; *Williams v. Kroger Grocery & Baking Co., supra,* 337 Pa. at 19, 10 A.2d at 9; *Wharen v. Dershuck, supra,* 264 Pa. at 566, 108 A. at 19–20; *Clark v. North American Co., supra,* 203 Pa. at 352, 53 A. at 239. Restated, under our law the inability of the publisher to overcome the presumption of falsity of the defamatory statement will not insure recovery by the plaintiff. The recovery is dependent upon plaintiff's ability to establish

malice or negligence on the part of the publisher in disseminating the defamatory falsehood.[13] *See* 42 Pa.C.S. § 8343(a)(7); *Corabi, supra,* 441 Pa. at 452 n. 10, 453, 273 A.2d at 899 n. 10; *Sciandra v. Lynett,* 409 Pa. 595 at 601, 187 A.2d 586 at 589; *McAndrew v. Scranton Republican Pub. Co.,* 364 Pa. 504 at 515, 72 A.2d 780 at 785; *Montgomery v. Dennison, supra,* 363 Pa. at 262–64, 69 A.2d at 524–25.

■ We are satisfied that Pennsylvania law makes a constitutionally acceptable accommodation between the freedom of expression required by the First Amendment and our law of civil libel for compensatory damages brought by a private individual to redress defamatory falsehood. Strict liability is a policy determination that injury flowing from a set of circumstances will be compensable regardless of the blamelessness of the conduct of the defendant. The prohibition of *Gertz* restrains a state from attempting to protect its private citizens from defamatory falsehood causing injury to reputation by allowing compensatory damages without predicating the recovery on a

---

13. In a rather circuitous argument, appellees contend that falsity is inextricably bound up with proof of fault. Appellees assert that to prove fault the plaintiff in fact must demonstrate the falsity of the matter. While in some instances the plaintiff may elect to establish the patent error in the material to demonstrate the lack of due care in ascertaining its truth, it does not necessarily follow that negligence of the defendant can only be shown by proving that the material is false. A plaintiff can demonstrate negligence in the manner in which the material was gathered, regardless of its truth or falsity. In such instance the presumption of falsity will prevail unless the defendant elects to establish the truth of the material and thereby insulate itself from liability. Where it is necessary to prove falsity to establish the negligence of the defendant, it is then the burden of the plaintiff to do so. This would appear to be a situation contemplated by former Chief Justice Roberts in his concurring opinion in *Moyer v. Phillips,* 462 Pa. 395, 404, 341 A.2d 441, 445 (1975) (Roberts, J., concurring, joined by Nix, J.). There it is suggested that "as a practical matter, the plaintiff will find it necessary to prove the falsity of the statement in order to establish the necessary element of fault; to this extent, the defendant is relieved of the burden of proving truth as a defense." *Id.,* 462 Pa. at 407–08, 341 A.2d at 447. That proposition will not, of course, hold true in all cases. Where negligence can be established without a demonstration of the falsity of the material, there is no additional obligation upon the plaintiff to prove the falsity of the material.

showing of some wrongdoing on the part of the publisher. To assess the liability solely on the basis that the published defamatory utterance was erroneous would offend the "breathing space" that free debate requires. As we understand the thrust of the *Gertz* reasoning, it would not offend the principles articulated therein to place the burden of proving truth upon a defendant as long as the recovery is dependent upon the plaintiff's ability to establish the defendant's willful or negligent conduct in publishing the defamatory matter.

Our conclusion is bolstered by the fact that the *Gertz* holding adopted the view of the dissenters in *Rosenbloom, supra,* 403 U.S. at 64, 91 S.Ct. at 1829 (Harlan, J., dissenting); *id.* at 86–87, 91 S.Ct. at 1840–1841 (Marshall, J., dissenting, joined by Stewart, J.), that the States are free to develop their own standards of liability for media defendants so long as they do not impose liability without fault. *See Gertz, supra,* 418 U.S. at 339, 347, 94 S.Ct. at 3006, 3010. In *Rosenbloom,* Pennsylvania libel law was under scrutiny and the dissenters were satisfied that their standard had not been violated. Although it was clear that the *Rosenbloom* Court was aware of the Pennsylvania requirement placing the burden of proving truth upon the defendant, nonetheless, neither dissenting opinion equated that allocation with strict liability. In fact, Justice Marshall plainly stated that Pennsylvania, unlike many other jurisdictions, did *not* apply a liability-without-fault standard. *Id.* 403 U.S. at 87 n. 13, 91 S.Ct. at 1841 n. 13 (Marshall, J. dissenting). Moreover, the plurality which would have required the actual malice standard at no point suggested that Pennsylvania law attempted to impose liability without fault.

What the appellee is in essence arguing is that, even though the media publishes or reports maliciously or negligently a defamatory statement injurious to the reputation of a private citizen, it should be insulated from liability unless the plaintiff can affirmatively demonstrate the falsity of the statement. We find nothing in the Supreme Court

decisions that would suggest such a result. The "breathing space" requirement of the First Amendment has not been extended, nor do we believe it can be reasonably extended, to condone or to encourage irresponsible conduct by the media in its exercise of informing the public of newsworthy events. Nor can we conceive of a legitimate constitutionally protected interest in condoning the media's malicious or negligent discharge of this responsibility. Free debate will not be encouraged by allowing it to become the forum for malicious or negligent abuse of the reputation of those involved in the controversy. The right to critize must carry some degree of responsibility, particularly where it may jeopardize the reputation of a private citizen.

We note further that a media defendant in a civil libel action is given even greater protection under our statutory law. In addition to the privilege to communicate matters of public interest and concern without fear of liability for erroneous information disseminated without negligence or malice, a newspaper publisher is privileged to withhold the identity of sources of information. The Pennsylvania Shield Law, 42 Pa.C.S. § 5942(a), provides that:

> (a) General rule.—*No person* engaged on, connected with, or employed by any newspaper of general circulation or any press association or any radio or television station, or any magazine of general circulation, for the purpose of gathering, procuring, compiling, editing or publishing news, *shall be required to disclose the source* of any information procured or obtained by such person, in any legal proceeding, trial or investigation before any government unit.

This statute has been interpreted broadly. *See, e.g., Lal v. CBS, Inc.,* 726 F.2d 97, 100 (3d Cir.1984); *Steaks Unlimited, Inc. v. Deaner,* 623 F.2d 264, 278 (3d Cir.1980); *In Re Taylor,* 412 Pa. 32, 40, 193 A.2d 181, 185 (1963). There, sources are excludable whether or not they contain the identity of sources actually used by the newspaper since the identity of all persons named or implicated in these sources is also included within the protection of the "shield law".

*Lal v. CBS, Inc., supra* at 100; *Steaks v. Deaner, supra* at 278; *In Re Taylor, supra,* 412 Pa. at 40, 193 A.2d at 185.[14]

As a consequence of this greater protection to the media defendant provided by the "shield law", the plaintiff in a civil libel action is restricted in his ability to prove the falsity of the defamatory statement. He is denied access to the sources of information on which the statement is based. The defendant, who does possess that information is therefore in a better position to prove the truth of the defamatory statement. Thus this additional protection to a media defendant and the resulting impediment imposed upon the plaintiff in seeking to establish the falsity of the statements provides a further justification for maintaining our current practice of requiring the defendant to prove truth in defense of such a suit.

## C.

For the foregoing reasons we hold that in a libel suit brought by a private individual for compensatory damages resulting from the defamatory material, the presumption of falsity remains and the defendant has the option of proving truth as an absolute defense to the action. The trial court's instruction to the contrary was error and the resulting verdict cannot be allowed to stand. Since the verdict was a general one we are unable to ascertain whether the jury found for the defendants because of its conclusion that the plaintiff had failed to establish the falsity of the defamatory statements or whether the verdict reflects a finding that defendant was not negligent in publishing the material. The latter reason, of course, would have been a proper basis for the verdict, but the former reason is not in accordance with our law. Accordingly, the judgment of the trial court is reversed and a new trial is awarded as to the claim for compensatory damages.

14. It must be noted that the shield law is designed to protect the confidentiality of the source; it was never intended to be interpreted as insulating the publisher from its negligence or actual malice.

## III.

Since we are remanding the cause for a new trial on compensatory damages, it is also necessary to review appellant's assertion that the trial court erred in withdrawing from the jury's consideration the punitive damage issue. The trial court ruled that the appellant had presented insufficient evidence of the reporter's "actual malice" at trial so as to raise a triable issue of fact. We agree.

We should note that the *Gertz* decision has raised considerable controversy concerning whether it foreshadows the total abolition of punitive damage awards in defamation cases.[15] In holding unconstitutional the awarding of presumed or punitive damages where defamatory publications are negligently published, the *Gertz* Court reasoned that the potential for large jury verdicts, completely unrelated to the actual injury suffered by the victim, might have a chilling effect or act as a prior restraint of free expression. *Gertz, supra,* 418 U.S. at 350–51, 94 S.Ct. at 3012–13. Further, the Court surmised that the doctrine of presumed damages and the unabridged discretion conferred upon juries to award punitive damages, bearing no relationship to the injury suffered, invites juries to punish the expression of unpopular opinion rather than effectuate any legitimate social goal. *Id.* at 350–51, 94 S.Ct. at 3012–13. Nonetheless, a number of courts have considered whether *Gertz* presaged the abolition of punitive damages and have concluded that it did not.[16] We are satisfied that under the

15. Some commentators believe that *Gertz* indicates the United States Supreme Court will ultimately abolish punitive damage in defamation cases. *See, e.g.,* Robertson, *Defamation and the First Amendment: In Praise of Gertz v. Robert Welch, Inc.,* 54 Tex.L.Rev. 199, 215 (1976); Comment, 28 Vand.L.Rev. 887, 897 (1975).

 Other commentators have concluded that *Gertz* did not in itself abolish punitive damages but merely limited their availability. *See, e.g.,* Frakt, *The Evolving Law of Defamation: New York Times Co. v. Sullivan to Gertz v. Robert Welch, Inc. and Beyond,* 6 Rut.-Cam.L.J. 471, 507 (1975); Comment, 6 Loyola University Law J. 256, 267 (1975).

16. *Hunt v. Liberty Lobby,* 720 F.2d 631 (11th Cir.1983); *Maheu v. Hughes Tool Co.,* 569 F.2d 459 (9th Cir.1977); *Buckley v. Littell,* 539 F.2d 882 (2d Cir.1976); *Appleyard v. Transamerican Press, Inc.,* 539

present law as articulated by the United States Supreme Court there has not been a sufficiently definitive directive to cause us to abandon the long standing practice in this jurisdiction of allowing punitive damages in the appropriate case.

The *Gertz* decision did make it clear that the negligent standard of fault would not be a sufficient basis for the allowance of punitive damages. To justify punitive damages, the plaintiff is called upon to satisfy the "actual malice" test. *Gertz v. Robert Welch, Inc., supra* at 350, 94 S.Ct. at 3012; *Levine v. CMP Publications, Inc.,* 738 F.2d 660, 674 (5th Cir.1984); *Braun v. Flynt,* 726 F.2d 245, 256 (5th Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 252, 83 L.Ed.2d 189 (1984); *Hunt v. Liberty Lobby,* 720 F.2d 631, 650 (11th Cir.1983); *Golden Bear Distributing Systems of Texas, Inc.,* 708 F.2d 944, 947 (5th Cir.1983); *Maheu v. Hughes Tool Co.,* 569 F.2d 459, 479 (9th Cir.1977); *Appleyard v. Transamerican Press, Inc.,* 539 F.2d 1026, 1030 (4th Cir.1976), *cert. denied,* 429 U.S. 1041, 97 S.Ct. 740, 50 L.Ed.2d 753 (1977); *Buckley v. Littell,* 539 F.2d 882, 897 (2d Cir.1976), *cert. denied,* 429 U.S. 1062, 97 S.Ct. 785, 50 L.Ed.2d 777 (1977); *Carson v. Allied News Co.,* 529 F.2d 206, 214 (7th Cir.1976); *Davis v. Schuchat,* 166 U.S.App. D.C. 351, 357, 510 F.2d 731, 737 (1975). We therefore turn to the question as to whether, upon this record, the trial court was correct in concluding that the evidence was insufficient to establish "actual malice". After a thorough review of the record, we are satisfied that the trial court's decision in this regard was correct.

In assessing the propriety of the trial court's withdrawal of the issue from the jury, we are mindful that

F.2d 1026 (4th Cir.1976), *Carson v. Allied News Co.,* 529 F.2d 206 (7th Cir.1976), *Davis v. Schuchat,* 510 F.2d 731 (D.C.Cir., 1975); *Selby v. Savard,* 134 Ariz. 222, 655 P.2d 342 (1982); *Roemer v. Retail Credit Co.,* 44 Cal.App.3d 926, 932, 119 Cal.Rptr. 82, 85 (1975); *Fopay v. Noveroske,* 31 Ill.App.3d 182, 198, 334 N.E.2d 79, 92 (1975); *Embrey v. Holly,* 293 Md. 128, 442 A.2d 966 (1982); *Newspaper Publishing Corp. v. Burke,* 216 Va. 800, 224 S.E.2d 132, 136 (1976); *Calero v. Del Chemical Corp.,* 68 Wis.2d 487, 228 N.W.2d 737, 747 (1975).

such a ruling should be entered only in a clear case. *Heffernan v. Rosser*, 419 Pa. 550, 215 A.2d 655 (1966); *Howard Express Co. v. Wile*, 64 Pa. 201 (1870). The publisher's hatred, spite, hostility or deliberate intention to harm the plaintiff is not sufficiently probative of his knowledge of falsity or awareness of probable falsity so as to allow its admissibility where "actual malice" is at issue, but once established, the elements heretofore enumerated would be admissible. *Cf. Greenbelt Coop. Publishing Ass'n. v. Bressler, supra*, 398 U.S. at 10–11, 90 S.Ct. at 1539–1540. As has been suggested, such testimony would invite a jury to improperly find a defendant liable where he acted with a guilty heart rather than a guilty mind. Also, it is axiomatic that a publisher's failure to investigate in itself is insufficient to establish "actual malice", *St. Amant v. Thompson, supra*, 390 U.S. at 732–33, 88 S.Ct. at 1326–27; *New York Times Co. v. Sullivan, supra*, 376 U.S. at 287–88, 84 S.Ct. at 729–30; *Hunt v. Liberty Lobby, supra* at 643; *Brewer v. Memphis Publishing Co., Inc.*, 626 F.2d 1238, 1258 n. 26 (5th Cir., 1980); *New York Times v. Conner*, 365 F.2d 567, 577 (5th Cir.1966). So too, errors of judgment or interpretation as opposed to errors of historical fact have been held to be insufficient to create a jury issue of "actual malice". *Time v. Pape*, 401 U.S. 279, 290, 91 S.Ct. 633, 639, 28 L.Ed.2d 45 (1971).

 "Actual malice" can be established either by proving the publication was made with the knowledge of the falsity of its content or with reckless disregard of whether it was false or not. *Rosenblatt v. Baer*, 383 U.S. 75, 84, 86 S.Ct. 669, 675, 15 L.Ed.2d 597 (1966); *New York Times Co. v. Sullivan, supra*. When the first alternative is relied upon, the plaintiff must show not only the falsity of the statement but, in addition, it is the plaintiff's responsibility to establish the defendant's knowledge of that falsity at the time of publication.

 In this context it must be noted that the presumption of falsity available to the plaintiff where the negligent standard is applicable is of no assistance in meeting the

burden of proving "actual malice" under this theory. The Supreme Court has made it clear that a presumption may not be used to satisfy the fault element of the cause of action. It is also to be noted that under our traditional law such an approach would not be allowed. We have long recognized the evidentiary principle that a presumption may not be built upon a presumption. *Collins v. Hand,* 431 Pa. 378, 246 A.2d 398 (1968); *Auerbach v. Philadelphia Transportation Co.,* 421 Pa. 594, 221 A.2d 163 (1966); *Neely v. The Provident Life and Accident Insurance Co.,* 322 Pa. 417, 185 A. 784 (1936); *Philadelphia City Passenger Railway Co. v. Henrice,* 92 Pa. 431 (1880); *Douglas v. Mitchell's Executor,* 35 Pa. 440 (1860). In this instance it would require presuming not only that the content was false, but also that the defendant at the time of publication knew of that falsity. This is the clearest type of double presumption that we have rejected. *Cf. Collins v. Hand, supra; Auerbach v. Philadelphia Transportation Co., supra.*

In the instant matter there was no basis for the jury to have concluded that the publication was made with the knowledge of the falsity of its content. While the plaintiff attempted to show that the dissemination was made with reckless disregard of the truth of its content, it is equally apparent that a jury issue was not created under the clear and convincing test required for such an award of damages. *Bose Corp. v. Consumers Union of U.S., Inc., supra,* — U.S. at — n. 30, 104 S.Ct. at 1965 n. 30, 85 L.Ed.2d at 526 n. 30; *Gertz v. Robert Welch, Inc., supra,* 418 U.S. at 342, 94 S.Ct. at 3008; *St. Amant v. Thompson, supra,* 390 U.S. at 731, 88 S.Ct. at 1325; *Garrison v. Louisiana, supra,* 379 U.S. at 74, 85 S.Ct. at 215; *New York Times v. Sullivan, supra,* 376 U.S. at 280, 84 S.Ct. at 726; *Levine v. CMP Publications, Inc., supra* at 674; *Gertz v. Robert Welch, Inc.,* 680 F.2d 527, 538 (7th Cir.1982), *cert. denied,* 459 U.S. 1226, 103 S.Ct. 1233, 75 L.Ed.2d 467 (1983); W. Prosser, *Torts* 771–772, 821 (4th ed. 1971). Thus the trial court properly withdrew that question from the jury's consideration. *Heffernan v. Rosser,* 419 Pa. 550, 215 A.2d 655

(1966); *Thomas v. Tomay*, 413 Pa. 270, 196 A.2d 740 (1964); *Greet v. Arned Corp.*, 412 Pa. 292, 194 A.2d 343 (1963); *Luterman v. Philadelphia*, 396 Pa. 301, 152 A.2d 464 (1959); *Miller v. Montgomery*, 397 Pa. 94, 152 A.2d 757 (1959); *Hepler v. Hammond*, 363 Pa. 355, 69 A.2d 95 (1949).

IV.

Accordingly, the order of the trial court is reversed and a new trial is awarded. The new trial will be confined to a determination of defendant's liability and the assessment of compensatory damages if the liability issue is decided in favor of the plaintiff.

LARSEN and McDERMOTT, JJ., did not participate in the consideration and decision of this case.